Dr. Kenneth CREER and Dr. Thomas Purvance, Plaintiffs and Respondents,

v.

Coy A. THURMAN, Defendant and Appellant.

No. 15361.

Supreme Court of Utah.

June 19, 1978.

Robert L. Moody of Christensen, Taylor & Moody, Provo, for defendant and appellant.

Allen K. Young of Stott, Young & Wilson, Provo, for plaintiffs and respondents.

MAUGHAN, Justice:

This is an action by plaintiffs for specific performance of an oral agreement to convey land, or, alternatively, for damages sustained by defendant's breach of the oral contract. The trial court ruled plaintiffs were entitled to specific performance, and if defendant could not specifically perform, plaintiffs were entitled to damages. We reverse. Costs are awarded to defendant.

Defendant Coy A. Thurman was the owner and beneficiary of a trust, which held a first mortgage on an animal hospital in Orem. Defendant's son, Joseph Thurman, who was the owner of the property, was in default on the mortgage payments, and foreclosure proceedings were initiated by Commercial Security Bank, the trustee of

11. *First Equity Corp. of Fla. v. Utah State University*, Utah, 544 P.2d 887 (1975).

the trust. Because Joseph Thurman was ill and in the hospital, defendant conferred with plaintiffs, discussing a possible sale of the property.

Plaintiffs and defendant attended a meeting held at Commercial Security Bank, in which the terms of the proposed sale were discussed. Plaintiffs agreed to purchase the animal hospital for $75,000 with payments of $627.34 per month to be made for 20 years at 8 percent interest. Pursuant to this discussion, which was never reduced to writing, plaintiffs took possession of the hospital in February of 1975 and remained until June of 1975. During this time plaintiffs made several alterations to the premises, changed the advertising sign, and purchased fire and liability insurance in their names. They tendered two of the monthly payments to the trust officer, but were told to retain the money until a formal contract was drawn up.

In June of 1975, plaintiffs were advised that Joseph Thurman had paid off the mortgage, and the property had been sold to a third party. They vacated the hospital, brought this action, demanding: (1) defendant perform according to his oral agreement to sell the property; and (2) alternatively, in the event specific performance was not possible, plaintiffs be awarded damages for defendant's breach of the oral contract.

The trial court, after a non-jury trial, found (1) there was an oral contract between the parties to convey the property; (2) plaintiffs' actions constituted sufficient part performance to take the contract out of the Statute of Frauds; (3) plaintiffs were entitled to specific performance; (4) if defendant were unable to convey the premises, a hearing would be held in which the amount of damages sustained by plaintiffs, because of defendant's breach, would be determined.

■ On appeal, defendant asserts the lower court erred in ruling an oral contract existed, that specific performance was warranted, and that, in lieu thereof, damages were allowable. We need only address the first of these assertions to resolve this case. Because this is an equitable action, we may review the facts and make an independent analysis of them.[1]

Defendant contends the contract, if it existed, was subject to a condition precedent that defendant acquire ownership of the property. On the other hand, plaintiffs state the facts support the finding of the court, viz., defendant simply *promised to obtain ownership rights and sell the property to plaintiffs.* Mr. Purvance testified defendant ". . . told me he could sell it. He could do anything he wanted to do with it." However, it is clear plaintiffs knew Joseph Thurman owned the property and defendant merely had a mortgage lien. Furthermore, plaintiffs understood no contract could be drawn up during the pendency of the foreclosure proceedings:

Q. Now referring to those conversations, isn't is a fact that Mr. Engstrom told you that they could not sell that property until the foreclosure proceedings had ended?

A. Mr. Engstrom said they couldn't draw up a contract until the foreclosure proceedings were terminated.

The trust officer, Mr. Engstrom, testified he explained to plaintiffs the position of the bank, viz., it had instigated a mortgage foreclosure proceeding but did not have legal title. He then stated:

We also indicated that we would be happy to have drawn a contract that if and when the bank, as trustee obtained title to that property, we would be happy to enter into a sales contract. This contract would be entered into on a contingent basis, because we had no idea that we would ever have title to that property.

In *State Bank of Lehi v. Woolsey*[2] we reiterated that a mortgagee has only a lien upon the property, which he can satisfy by sale of the premises, and that legal title remains in the mortgagor until it is transferred to a purchaser at a judicial sale. In

---

1. Utah Const., Art. VIII, Sec. 9.

2. 565 P.2d 413 (1977).

the case at bar, it is clear Joe Thurman retained legal title to the animal hospital during the time plaintiffs and defendant were discussing the potential sale.

From a review of the record, we think the preponderance of the evidence establishes defendant's promise to convey the premises was conditioned upon Joe Thurman not paying the balance owed on the debt to defendant. Because of this condition, the bank was unwilling to reduce to writing any contract for sale.

As owner, Joe Thurman had the right to, and did pay off the balance owed on the debt, which extinguished defendant's mortgage lien. At that point, it became impossible for defendant to perform, for he could only acquire title to the property by purchase at the foreclosure sale. Of course, the need for the foreclosure sale ceased when the debt was paid.

The evidence establishes plaintiffs were told by defendant's attorney to negotiate with the owner, Joe Thurman, not the bank. Despite this advice, plaintiffs dealt only with defendant and the bank, even though plaintiffs knew they did not own the property. We think plaintiffs were aware of the contingent nature of the arrangement; they accepted the risk that defendant's promise to sell the land was subject to Joe Thurman's right to pay off the mortgage debt, and that no written contract could be entered into until the foreclosure proceedings were ended. Illustrating this is Dr. Purvance's testimony regarding the hospital sign:

> . . . I told Mr. Thurman that we were still holding painting the sign. It was a considerable expense and we didn't want to do that until we had something in writing and we had been told this by many people. I'll admit that very much. That was a very foolish thing to do.

Whether a provision in a contract is a condition, the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in light of all the circumstances when they executed the contract.[3] When viewed according to the above statement, the facts of the case illustrate the parties understood defendant's obligation to perform was conditional.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

**3.** 5 Williston, Contracts (3rd ed.) Sec. 663, p. 127.