Jerry L. CAVEN and Thomas O'Donnell d/b/a States Investment, a partnership, Plaintiffs/Appellees,

and

Timothy Wayne d/b/a Timothy Wayne and Associates, Intervenor Plaintiff/Appellee/Cross Appellant,

v.

AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF COLORADO, Defendant/Appellant.

Nos. 85–1517, 85–1551.

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1988.

F. James Donnelly (Charles A. Miller, with him on briefs), of Stutz, Dyer, Miller and Delap, Denver, Colo., for plaintiffs/appellees.

Howard L. Slavin, Denver, Colo., for intervenor plaintiff/appellee/cross appellant.

Gregory B. Kanan of Rothgerber, Appel, Powers & Johnson, Denver, Colo. (Thomas M. Domme and Elizabeth T. Wald of Rothgerber, Appel, Powers & Johnson, Denver, Colo., and John J. Keilbach of Preston, Altman, Parlapiano, Keilbach & Lytle, Pueblo, Colo., with him on briefs), for defendant/appellant.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and BRIMMER, District Judge *.

STEPHEN H. ANDERSON, Circuit Judge.

In this diversity action, American Federal Savings appeals from an award of damages to Jerry Caven for breach of contract. We reverse. Timothy Wayne & Associates appeals from a directed verdict in favor of American Federal Savings in the same action. We affirm.

## I.

In 1972, American Federal Savings and Loan Association of Colorado ("American Federal") agreed to finance the purchase of real estate and the construction of apartments in Pueblo, Colorado. The borrower executed a loan agreement with American Federal, subject to a contemporaneous Deed of Trust that included the following provision regarding transfer of ownership of the property:

"In the event the property securing this loan or any portion thereof is proposed to be sold or conveyed or becomes the subject of any agreement to sell prior to the maturity hereof, the proposed transferee shall be subject to the prior approval of the holder. In such event, the holder shall be provided with documentation to include, but not limited to, copies of: purchase or transfer agreement; management agreement, if any; financial and income statements of the proposed transferee, and a report on the credit standing of the proposed transferee from an approved professional credit reporting agency. *The holder shall review the documentation to ascertain transferee's management skills (or skills of a professional manager to be retained by transferee), credit worthiness and ability to repay this Deed of Trust in accordance with the terms and provisions contained herein. Holder shall have the right to approve any such proposed transferee; however, approval shall not be unreasonably withheld.* If, however, such approval is withheld, but not unreasonably, and the transfer, sale or conveyance is nevertheless consummated, the entire indebtedness shall immediately become due and payable at the option of the holder. In any event, no such transfer shall be permitted until construction

* Chief Judge, U.S. District Court for the District of Wyoming, sitting by designation.

is completed and a certificate of occupancy issued."

R.Vol. I at 11 (emphasis added).

In July, 1977, Jerry Caven purchased the apartments and assumed the American Federal loan, subject to the original Deed of Trust. At the time of the purchase the Deed of Trust was supplemented by a modification agreement between Caven and American Federal.[1] The modification agreement altered the interest rates on the underlying promissory note, provided for a late payment charge and included the following provision under the heading "Transfer of Ownership:"

*"If there shall be any change in the ownership of said premises without the written consent of the Association being first obtained, the entire indebtedness secured hereby shall become due and payable at the option of the Association.* If the Association consents to such change of ownership, then the current transfer fee shall be due and payable to the association."

R.Vol. I at 14 (emphasis added). The modification agreement also included the following provision, as the final paragraph:

"This agreement is supplementary to said Note and Deed of Trust. *All of the provisions of the Note and Deed of Trust, including the right to declare the principal and accrued interest due for any cause specified therein, shall remain in full force and effect except as specifically herein modified. ...*"

R.Vol. I at 14 (emphasis added).

In 1982, Caven sought to sell the apartments. He retained Timothy Wayne & Associates ("Wayne"), the intervenor plaintiff below, as brokers. On August 18, 1982, Caven entered into a contract with Donald Macy and Donald Egan to sell the apartments for a purchase price of $3,160,-000.00. Caven forwarded the contract and financial information concerning the potential purchasers to American Federal.

American Federal responded by (1) requesting more detailed financial information, and (2) demanding a substantial increase in the interest rates. Caven countered by arguing that American Federal had no right to increase the interest rate. American Federal disputed that argument and stated that it would not consent to any assumption of the loan and required that the loan be liquidated when the property was sold. As a result, Macy and Egan withdrew from the contract. Caven subsequently sold the apartments on a cash basis to another purchaser for $2,800,000.00 and instituted this diversity action against American Federal for breach of contract. Wayne intervened as a plaintiff alleging breach of contract and tortious interference with contract, claiming as damages his lost commission on the aborted sale to Macy and Egan.

Prior to trial, Caven and American Federal both moved for summary judgment based on their interpretations of the language in the Deed of Trust and modification agreement. Caven argued that the modification agreement did not "specifically modify" the language of the Deed of Trust, and that American Federal had no power to condition an assumption of the loan on an increase in interest rates. American Federal argued that the provision in the modification agreement was an "absolute due on sale clause" that replaced the earlier provision and gave American Federal the power to disapprove an assumption of the loan for any reason.

The district court below granted partial summary judgment to Caven, holding that the language in the modification agreement did not specifically modify "either the procedural aspects of how the information shall be presented to [American Federal], nor the fact that approval shall not be [un]reasonably withheld. It specifically does not affect those provisions." R.Vol. IV at 6.

Trial proceeded to a jury to determine whether American Federal had complied

---

1. In 1980, the parties signed a second modification agreement. American Federal extended the payment dates on a personal loan to Caven, and in return, Caven agreed to an increase in the interest rate on the underlying loan. For purposes of this dispute, the relevant language of the second agreement is identical and this opinion will reference only one "modification agreement."

with the provisions of the Deed of Trust. Caven's breach of contract claim went to the jury and the jury returned a verdict in Caven's favor for $300,000.00. The trial court granted American Federal's motion for a directed verdict against Wayne, holding that, under Colorado law, he could not succeed on the interference with contract claim. American Federal appeals from the trial court's partial summary judgment for Caven, from the judgment entered for Caven, and from the denial of its motion for judgment notwithstanding the verdict. Wayne appeals from the directed verdict against him.

## II.

We turn first to the partial summary judgment granted to Caven. "When reviewing a grant of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied." *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986) (citations omitted). The parties do not dispute the material facts, thus we are left to determine if the district court correctly applied the substantive law. "In reviewing the trial court's construction of the contract, it should be noted that ordinarily the construction of a contract is a question of law for the court." *Resort Car Rental Sys., Inc. v. Chuck Ruwart Chevrolet, Inc.*, 519 F.2d 317, 320 (10th Cir.1975). *See also Union Rural Elec. Ass'n, Inc. v. Public Util. Comm.*, 661 P.2d 247, 251 (Colo.1983) ("Interpretation of contract language is generally a question of law."); *Stroh–Mc Investments v. Bowens*, 725 P.2d 33, 34 (Colo.Ct.App.1986) ("Interpretation of the language of a contract is a question of law for the court."). In reviewing a question of law, we are not bound by the district court's conclusions. *See Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 734 (9th Cir.1980); C. Wright and A. Miller, *Federal Practice and Procedure*, Civil § 2588, at 750 (1971) ("the interpretation and the construction of written contracts are matters of law and freely reviewable as such"). *See also Reynolds v. Farber*, 40 Colo.App. 467, 577 P.2d 318, 320 (1978) ("Since the construction of a written instrument is a question of law, this court is not bound by the trial court's interpretation.").

In this diversity action, we look initially to Colorado law for guidance in interpreting this contract. The parties cite a variety of rules and principles of contract construction used in Colorado. No decision by the Colorado courts directs us to only one permissible conclusion in the interpretation of the specific language of this contract. However, we find certain principles helpful. First, where "the language used is plain, clear, and no absurdity is involved, we must declare and enforce the instrument as written." *Fuller & Co. v. Mountain States Investment Builders*, 37 Colo.App. 201, 546 P.2d 977, 980 (1975). Second, "[w]e must adopt a construction of the agreement that will give effect to all of its provisions." *Union Rural*, 661 P.2d at 252. *See also Oriental Refining Co. v. Hallenbeck*, 125 Colo. 77, 240 P.2d 913, 916 (1952) ("each and every part and portion of a contract is to be given effect, if possible"). Finally, the parties have not cited, nor have we found, any clear statement of the Colorado courts on the effect of a modification agreement, but we believe the following statement by the Utah Supreme Court correctly states general contract law relating to modification agreements:

"It is well-settled law that the parties to a contract may, by mutual consent, alter all or any portion of that contract by agreeing upon a modification thereof. Where such a modification is agreed upon, the terms thereof govern the rights and obligations of the parties under the contract, and any pre-modification contractual rights which conflict with the terms of the contract as modified must be deemed waived or excused."

*Rapp v. Mountain States Telephone and Telegraph Co.*, 606 P.2d 1189, 1191 (Utah 1980) (footnotes omitted). This same principle was stated by the District of Columbia Court of Appeals in *Egan v. McNamara*, 467 A.2d 733, 740 (D.C.1983): "a contract containing a term inconsistent

with a term of an earlier contract between the same parties regarding the same subject matter should be interpreted to rescind the inconsistent term in the earlier contract." We believe that the Colorado Supreme Court would apply those general principles.

■ With those principles in mind, we turn to the language of the modification agreement. The terms of that agreement are plain. "If there shall be *any* change in the ownership ... without the written *consent* of [American Federal] being *first* obtained, the entire indebtedness secured hereby shall become due and payable at the *option* of [American Federal]." R.Vol. I at 14 (emphasis added). The modification agreement includes no conditions or limitations on American Federal's right to disapprove an assumption of the loan. In our view, this language "specifically modifies" the procedural requirements and the limitation of the Deed of Trust providing that approval of the transferee may not be "unreasonably withheld."

In addition to the plain language of the agreement, we find two arguments persuasive. First, the parties executed a *modification* agreement. We assume that they wanted to change the prior terms of their contract. *See South Florida Beverage Corp. v. Figueredo,* 409 So.2d 490, 496 (Fla.Dist.Ct.App.1981) ("It may be presumed, however, than an amendment to an agreement is designed to serve some useful function, and its existence is strong evidence, therefore, that the contract was changed from what the parties believed and intended was provided before."), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982). The interpretation urged by Caven, and adopted by the district court, adds nothing to the terms of the original Deed of Trust and renders the cited portion of the modification agreement

meaningless. We do not believe the parties intended to adopt modifying language without any force.[2] The second argument is closely related. Under Colorado law, we are urged to give effect to all provisions of a contract. *Union Rural,* 661 P.2d at 252. This principle is violated by an interpretation of the agreement that renders the transfer of ownership provisions in the modification agreement without effect. Thus, we face conflicting provisions in the original contract and modification. We choose to enforce the provision in the later agreement, which is *by its very nature,* intended to modify the earlier agreement. Accordingly, we conclude that American Federal had the absolute right and power to call the loan to Caven due and payable upon any transfer, and it was entitled to a summary judgment to that effect.

### III.

Colorado recognizes the tort of intentional interference with contractual relations. *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207, 210 (Colo.1984). At trial, Wayne argued that American Federal induced Macy and Egan to breach the purchase contract with Caven, resulting in the loss of a real estate commission to Wayne.

Colorado relies on the provisions of the *Restatement (Second) of Torts* §§ 766, 767 (1977) to define the elements of that tort. *Trimble v. City and County of Denver,* 697 P.2d 716, 725–26 (Colo.1985); *Memorial Gardens,* 690 P.2d at 210. Specifically, the Colorado Supreme Court has held that a party may not be held liable for the intentional interference with contractual relations unless that party's conduct was "improper."[3] *Trimble,* 697 P.2d at 726; *Memorial Gardens,* 690 P.2d at 210.

---

**2.** On appeal, Caven advances several creative interpretations of the provision designed to give it an effect consistent with the Deed of Trust. For example, we are urged to read it as a "gap filling" provision, effective only in the case where the borrower transfers the property without notice to the lender. We have considered this, and other arguments, carefully and find

that the plain language of the agreement cannot support the reading urged by Caven.

**3.** *Restatement (Second) of Torts* § 767 (1977) specifies the factors to be considered in determining whether an actor's conduct in intentionally interfering with a contract is improper:

(a) the nature of the actor's conduct,

(b) the actor's motive,

**432**

■ At the close of the trial below, the district court granted American Federal's motion for a directed verdict against Wayne, holding that, as a matter of law, Wayne was unable to show that American Federal's actions were improper. Normally, we would review the directed verdict viewing the evidence and all reasonable inferences that can be drawn from that evidence most favorably to the non-moving party. *See Brown v. Reardon*, 770 F.2d 896, 902 (10th Cir.1985). In this case, however, we have already determined that American Federal had an absolute right to insist on an increase in the interest rate under the terms of the modification agreement. That decision renders Wayne's claim and appeal moot. For under Colorado law, "[n]o liability attaches [for intentionally interfering with contractual relations] where the act claimed to have caused the breach is undertaken in the exercise of an absolute right, that being conduct which the actor has a definite legal right to engage in without qualification." *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 39 Colo.App. 100, 565 P.2d 952, 954 (1977) (citation omitted).

The district court's orders granting partial summary judgment for Caven, denying summary judgment for American Federal, and denying American Federal's motion for judgment notwithstanding the verdict are REVERSED. The district court's order granting a directed verdict against Wayne is AFFIRMED.

(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.