**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

HUNGER UNITED STATES
SPECIAL HYDRAULICS
CYLINDERS CORP., an Ohio
corporation,

Defendant-Appellant,

v.

HARDIE-TYNES
MANUFACTURING COMPANY,
a Delaware corporation,

Defendant-Appellee.

No. 99-4042
(D.C. No. 94-CV-83)
(D. Utah)

ORDER AND JUDGMENT *

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal.   <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

**GENERAL BACKGROUND**

This dispute arises out of the construction of the Jordanelle Dam near Heber City, Utah, a project of the United States Bureau of Reclamation (BOR). The general contractor, Granite Construction Company, subcontracted with appellee Hardie-Tynes Manufacturing Company (Hardie-Tynes) to supply two hydraulic cylinders for installation in the dam outlet lift gates.  In turn, Hardie-Tynes subcontracted with appellant Hunger United States Special Hydraulic Cylinders Corporation (Hunger), an Ohio corporation with a German parent corporation, to manufacture the cylinders.

All aspects of construction were to meet BOR specifications and standards. After an inspection of the cylinders at Hunger's Ohio plant, the BOR notified Hardie-Tynes that the cylinders did not resemble those it normally ordered and asked for Hunger's assurance that the cylinders complied with its requirements. Hunger certified that they did and contract performance continued.

Upon completion of the cylinders, Hardie-Tynes incorporated them into the gates and shipped the gates to the dam site in Utah.  There, another subcontractor, Murphy Company Mechanical Contractors & Engineers (Murphy, the original

-2-

plaintiff in this action) installed them into the dam. During testing, Murphy overpressurized one of the cylinders and damaged it.

The incident triggered new questions about the cylinders' compliance with BOR requirements. At first, Hunger claimed that they did comply, but eventually admitted that it could not provide calculations proving that the German materials used in the cylinders met the applicable American standards. As a consequence, the BOR demanded replacement of both the damaged and intact cylinders. Murphy replaced the damaged cylinder and Hardie-Tynes replaced the other one.

Murphy brought suit in Utah state court against Hardie-Tynes, Hunger, and a number of other parties. Hunger removed the action to federal district court. Except for cross-claims between Hardie-Tynes and Hunger, the parties settled the lawsuit. The district court then entered judgment on the settled claims and turned to Hardie-Tynes' motion for partial summary judgment on Hunger's liability for breach of contract. After the court granted the motion, Hardie-Tynes and Hunger stipulated as to the amount of damages and attorneys' fees incurred by Hardie-Tynes. Based on the stipulation, judgment was entered in favor of Hardie-Tynes. Within ten days of entry of judgment, Hunger filed a motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The district court denied the post-judgment motion.

In this appeal, Hunger argues that (1) the district court lacked jurisdiction over its person, (2) factual disputes preclude summary judgment on Hardie-Tynes' breach of contract claim, and (3) Hardie-Tynes is not entitled to an award of attorneys' fees and indemnity amounts. We conclude that the district court properly exercised jurisdiction over Hunger. We also affirm the entry of summary judgment and the inclusion of indemnity amounts in the damage calculation. Concerning the award of attorneys' fees, however, we reverse and remand for further proceedings consistent with this order and judgment..

## DISCUSSION

### I.    Personal Jurisdiction

Hunger contends that its contacts with Utah do not satisfy either the constitutional minimum contacts standard or the Utah long-arm statute, see Utah Code Ann. § 78-27-24, and therefore it is not subject to personal jurisdiction in the State of Utah. We review the district court's ruling on the jurisdictional issue de novo. See, e.g., Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995).

Normally,

[t]o obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.

-4-

> In Utah, jurisdiction is appropriate only if plaintiff establishes that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct. See Utah Code Ann. § 78-27-24.

Id. at 1074 (citation omitted). Nevertheless, in this case we need not evaluate the extent of Hunger's contacts with Utah.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a defense based on lack of personal jurisdiction is waived if not made by motion or included in a responsive pleading. The rule, however,

> sets only the outer limits of waiver; it does not preclude waiver by implication. Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity. This defense may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.

Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990) (citations and quotations omitted).

In the absence of a motion to dismiss, a party's continued participation in litigation is inconsistent with an assertion of lack of personal jurisdiction. See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 59 (2d Cir. 1999) (concluding that defendant "forfeited its defense of lack of personal jurisdiction by participating in

extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer"); Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (3d Cir. 1999) (stating that "where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter"); Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir.) (stating that "a party's failure to satisfy th[e] minimum steps" specified in Rule 12(h)(1) is not the only way to waive the defense of lack of personal jurisdiction), cert. denied, 119 S. Ct. 446 (1998); Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (determining that defendants' conduct constituted waiver of personal jurisdiction defense); cf. Thompson v. United States, 312 F.2d 516, 519-20 (10th Cir. 1962) (holding that an objection to venue is waived by the filing of a motion for summary judgment).

Hunger removed the case to federal court on January 25, 1994, and, shortly afterwards, filed a cross-claim against Hardie-Tynes. Subsequently, Hardie-Tynes asserted a cross-claim against Hunger. In answering that cross-claim, on May 25, 1994, Hunger alleged that the court lacked jurisdiction over its person. It then engaged in settlement negotiations and entered into a stipulation to dismiss all claims except for the cross-claims between itself and

Hardie-Tynes. On March 10, 1997, the district court dismissed the settled claims with prejudice.

Hunger then sought a prejudgment writ of attachment in connection with its cross-claim and responded to a similar request from Hardie-Tynes. On July 10, 1997, more than three years after commencement of the action, Hunger attempted to revive its personal jurisdiction defense by filing a motion to dismiss Hardie-Tynes's cross-claim.

While Hunger timely raised the defense in its answer, as required by the Federal Rules, it did not request a ruling on the issue until most of the claims in the case were resolved and dismissed. Instead, Hunger actively participated in the litigation and sought affirmative relief from the court.

We have no difficulty in determining that Hunger's actions "amount[ed] to a legal submission to the jurisdiction of the court." Compagnie des Bauxites de Guinee, 456 U.S at 704-05. After its lengthy participation in this litigation, efforts to seek affirmative relief, and settlement of claims, Hunger may not pull its personal jurisdiction defense "'out of the hat like a rabbit.'" Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 176 (10th Cir.1992) (quoting Broadcast Music, Inc. v. MTS Enters., Inc., 811 F.2d 278, 281 (5th Cir.1987))

(rejecting a belated personal jurisdiction defense backed on lack of service of process). [1] The district court properly denied Hunger's motion to dismiss.

## II.    Breach of Contract Issues

A resolution of the remaining issues in this case depends upon an interpretation of the Hardie-Tynes/Hunger contract, which consists of several documents exchanged by the parties. The interpretation is a matter for our de novo review. See Moncrief v. Williston Basin Interstate Pipeline Co., 174 F.3d 1150, 1163 (10th Cir. 1999). Our task begins with sorting through the documents exchanged by the parties and setting out a framework for determining their legal effect. [2]

---

[1]    Hunger's assertion that there was "little activity by the parties" during the three-year period after removal and before Hunger's dismissal motion does not jibe with the record. Appellant's Br. at 26. We note that the district court's docket sheet reflects thirty-six entries between those two case events and that, in spite of an alleged lack of formal discovery, the parties appeared to have access to all necessary documents.

We also note that Hunger continued to prosecute its cross-claim until it stipulated to an amount as an offset to Hardie-Tynes' damages. Cf. Neifeld v. Steinberg, 438 F.2d 423, 427 (3d Cir. 1971) (holding that the assertion of a permissive counterclaim does not constitute a waiver of a personal jurisdiction defense "where the defendant later validly withdraws the counterclaim without leave of court").

[2]    Because this is a diversity action filed in Utah, we apply Utah's substantive law, including choice of law rules. See Bancoklahoma Mortgage Corp. v. Capital Title Co., 194 F.3d 1089, 1103 (10th Cir.1994). In its appellate briefs, Hunger cites primarily to the statutory and judicial law of Ohio, where

(continued...)

## A.    Contract Formation

### 1.    Contract Documents

Hardie-Tynes opened contract negotiations by sending a request for quotations, dated October 26, 1988, asking for Hunger's best price for two cylinders "PER [attached BOR] DRAWINGS . . . AND SPECIFICATIONS . . . AND BUREAU OF RECLAMATION ACCEPTED PRACTICES.  MATERIAL IS TO BE AMERICAN, CERTIFICATION PAPERS ARE REQUIRED."  Joint App. at 365.  On December 21, 1988, Hunger responded with a letter stating it was "pleased to quote your requirements as follows" and providing specific quantity, price, delivery, and payment terms.    Id. at 367.

The parties agree that the quotation constituted an offer to contract. See, e.g., Rochester Plumbing Supply Co. v. A. Burgart, Inc.    , 370 N.Y.S.2d 716, 719 (1975) (determining that a price quotation for fabricated materials to be used in a construction bid amounts to an offer).  A copy of Hunger's "standard terms

---

[2](...continued)
Hunger is headquartered.  It does not argue, however, that Utah choice of law rules dictate application of Ohio law.  Furthermore, we note that both Ohio and Utah have adopted the Article 2 of the Uniform Commercial Code (U.C.C.), which governs sales of goods.    See Ohio Rev. Code Ann. §§1302.01 to 1302.98; Utah Code Ann. §§ 70A-2-201 to -725.  In this order and judgment, we use citations to the Uniform Commercial Code.

and conditions applicable to all sales" may have accompanied the offer.[3] These standard terms included a provision attempting to specify a mode of acceptance and limiting acceptance to Hunger's terms. None of the terms related to payment of attorneys' fees in the event of a contract dispute.

Hardie-Tynes accepted Hunger's offer by sending a purchase order, dated June 20, 1988. A provision on the face of the order released Hunger to make drawings in accordance with referenced BOR drawings and specifications, but not to begin manufacturing. See Joint App. at 370-71. It also stated that "ALL ASPECTS OF PROPER WORKMANSHIP, TESTING, PREPARATION FOR SHIPMENT ALONG WITH PROPER PAPER WORK [ARE] MOST IMPORTANT, AS FINAL OWNERSHIP WILL BE U.S. BUREAU OF RECLAMATION. . . . FURNISH CERTIFICATE OF COMPLIANCE ON LABOR AND TEST REPORTS ON MATERIAL." Id. at 371.

The printed portion of Hardie-Tynes' purchase order form states, on its face, that the conditions listed on the back are part of the order. Id. Except for a provision requiring payment of attorneys' fees "[i]n the event that Buyer commences litigation . . . upon Seller's default," id. at 372, the terms were similar

---

[3]    There is a factual dispute about whether a copy of the standard terms were enclosed with the letter. There is no dispute that the terms were printed on the reverse side of another contract document, Hunger's acknowledgment form. Accordingly, a finding on the issue is immaterial to our analysis.

to Hunger's. Like Hunger, Hardie-Tynes attempted to limit the agreement to its own terms. Although the contract had already been formed, Hunger sent a written acknowledgment of the purchase order. The face of the acknowledgment did not call attention to them, but Hunger's standard conditions were printed on the reverse side.

The contract was not yet in its final form, however. As required by the purchase order, Hunger prepared drawings for approval. With the drawing, it proposed an alternative design for the cylinders' piston rings and seals. Because this design deviated from the solicitation drawings and specifications, the BOR's review and approval was necessary. While this review was being conducted, Hardie-Tynes issued Amendment No. 1 on its form purchase order, releasing Hunger to begin construction of the cylinders except for the piston rings and seals. The amendment, dated October 31, 1989, stated that "THE CYLINDERS AND PARTS [were] TO BE PER HUNGER DRAWINGS AND H-T DRAWINGS . . . . ALL OTHER CONDITIONS AND STIPULATIONS OF THE ORIGINAL PURCHASE ORDER ARE TO REMAIN THE SAME." Id. at 382. Hunger sent another acknowledgment form. See id. at 383.

After further discussion, the BOR approved the design for the piston rings and seals. With Amendment No. 2 to the purchase order, dated December 14, 1989, Hardie-Tynes notified Hunger of the approval and again stated that all other

provisions of the original order remained in effect.     See id. at 386.  Hunger sent

an acknowledgment form.     See id. at 391.

To the extent the two amendments conflicted with the earlier documents,

they amounted to modifications of the parties' contract.     See Caven v. American

Fed. Sav. & Loan Ass'n  , 837 F.2d 427, 430-31 (10th Cir. 1988) (citing     Rapp v.

Mountain States Tel. & Tel. Co.   , 606 P.2d 1189, 1191 (Utah 1980)).

Thus, the relevant contract documents are:  Hunger's quotation, sent in

response to Hardie-Tynes' request; Hardie-Tynes' purchase order and amended

purchase orders; and Hunger's acknowledgments.     [4]  The boilerplate language

contained in the parties' forms, however, did not change during the contracting

process.  As a consequence, there are only two sets of standard terms.

## 2.    Framework for Analysis of Contract Documents

Where "parties use[] prefabricated forms to evidence their deal,      they are

not generally aware of a disparity between the standard terms printed on their

forms."  Murray , supra note 4 at 1466.  Usually, the parties "concentrate[]

exclusively on the 'dickered' terms of the deal, i.e., those terms which they

consciously adverted, such as the description of the goods, the quantity, the price

---

[4]     See John E. Murray, Jr.,    The Revision of Article 2: Romancing the Prism      ,
35 Wm. & Mary L. Rev. 1447, 1479 (1994) (noting that a "confirmation cannot be
an acceptance because the acceptance has already occurred and a contract was
formed.  Section 2-207(1) [of the U.C.C], however, would have us pretend that
the confirmation is an acceptance").

and other terms which the decent merchant consciously would consider." Id. The purpose of U.C.C. § 2-207, often called the "Battle of the Forms" provision, is "to discover the genuine factual bargain of the parties." Id. at 1464, 1466. Under § 2-207, "additional terms inserted unilaterally in [an acceptance or] a confirmation form become part of a contract between merchants unless: an offer is made expressly conditional to its terms, § 2-207(2)(a); the additional terms are expressly objected to, § 2-207(2)(c); or *the terms cause a material alteration to the contract*, § 2-207(2)(b)." Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997) (footnote omitted). [5]

---

[5] Section 2-207 provides, in pertinent part:

Additional Terms in Acceptance or Confirmation.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

   (a) the offer expressly limits acceptance to the terms of the offer;
   (b) they materially alter it; or
   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

-13-

In this case, Hardie-Tynes and Hunger, who are both merchants, each argue that its own terms should control and the other's should be completely disregarded. Hardie-Tynes' "all or nothing" theory was accepted by the district court.

Hardie-Tynes makes a two-part argument: (1) Hunger's conditions should be excluded because the face of its form does not call attention to the presence of terms on the reverse side and (2) its own conditions should control because it made acceptance conditional on assent to its terms. The first part of the argument is loosely based on case law reflecting the frequent use of forms which contain a provision on their face referring to terms on the reverse. See, e.g., Avila Group, Inc. v. Norma J. of Cal., 426 F. Supp. 537, 541 (D.N.Y. 1977) (enforcing terms on reverse side which were referenced near the signature line on face of form); H.D. Fowler Co. v. Warren, 562 P.2d 646, 648 (Wash. App. 1977) (same). It does not necessarily follow, however, that this body of case law stands for the proposition that terms on the reverse side of a form are automatically excluded unless there is a reference to them on the face of the form.

The per se rule suggested by Hardie-Tynes has no foundation in the language of U.C.C. § 2-207. Moreover, the application of such an artificial and technical rule would shed no light on the true factual bargain of the parties. Where, as here, the terms on the reverse side of a form are provided to the other

contracting party, not contradicted on the face of the form, and not concealed in some way, they may not be discounted simply because they are not referenced on the front of the form. Instead, the terms should be evaluated to determine whether they are "additional to or different from those offered or agreed upon," U.C.C. § 2-207(1), and whether they "become part of the contract," § 2-207(2). For purposes of a § 2-207 analysis, Hunger's terms are on equal footing with those of Hardie-Tynes. [6]

The second part of Hardie-Tynes' argument is that all of its own terms are included in the contract. To support this claim, Hardie-Tynes quotes the following language from its purchase order: "This Order constitutes Buyer's offer to purchase and forms a binding contract on the terms set forth herein when accepted by Seller. . . . No modification of this Order . . . shall be binding upon Buyer if in conflict with or inconsistent with these terms and conditions, unless accepted in writing by Buyer." Joint App. at 372.

It is apparent that this language contemplates a transaction in which the "Buyer's" purchase order constituted an offer which ripened into a contract only when the "Seller" accepted it.   Id.  Here, however, Hunger (the seller) made the offer and Hardie-Tynes (the buyer) accepted with its purchase order. As a

_____

[6]    We note that the U.C.C. does not require any of the terms at issue in this case to be conspicuous.   See § 2-316(2) (requiring conspicuous exclusion or modification of implied warranties).

-15-

consequence, "the boilerplate provision does not directly address the instant case." Daitom, Inc. v. Pennwalt Corp. , 741 F.2d 1569, 1576 (10th Cir. 1984). The language cannot be understood to mean that, under § 2-207(2)(a), Hardie-Tynes made an offer expressly limiting acceptance to its terms; or, under § 2-207(1), made its acceptance "expressly . . . conditional on assent to the additional or different terms." This "imprecision of language, " Daitom, 741 F.2d at 1576, does not render Hunger's terms completely controlling.

Hunger's competing argument suffers from the identical flaw. Paragraph one of Hunger's standard terms and conditions states: "[o]rders placed by Buyer may be accepted by Seller only by executing Seller's own acknowledgment form and returning it to the Buyer. It is the specific intent of the parties that the only contract between them is set forth in the terms and conditions herein stated." Joint App. at 369, ¶ 1.

This provision, like Hardie-Tynes', was meant for use in a transaction in which the buyer's offer was to be "accepted by Seller." Id. Hunger, however, included the provision in its offer and acknowledgment. As we have stated above, the boilerplate language does not serve to limit the Hardie-Tynes' contracting rights under these circumstances.

Because neither Hardie-Tynes' nor Hunger's terms are in sole control of the agreement, their contract consists of: (1) terms on which their writings agree; and

-16-

(2) additional terms, proposed by either party, which are not material alterations of the agreement, see U.C.C. § 2-207(2)(b).

## B. Summary Judgment on Breach of Contract Claim

The district court granted Hardie-Tynes' motion for partial summary judgment based on a determination that Hunger's cylinders failed to meet the negotiated terms of the parties' contract.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In determining whether the evidence presents a genuine issue of material fact, we view it in the light most favorable to the party against whom summary judgment was entered.

Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 589-90 (10th Cir. 1999) (quotations and citation omitted). "The interpretation of an unambiguous contract is a question of law to be determined by the court and may be decided on summary judgment." Public Serv. Co. v. Burlington N. R.R., 53 F.3d 1090, 1096 (10th Cir. 1995) (citation omitted).

The intent of the parties governs contract interpretation. See Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co., 899 P.2d 766, 770 (Utah 1995). To determine intent, we examine the contract documents in light of the surrounding circumstances: "[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties

-17-

. . . so that the court can place itself in the same situation in which the parties found themselves at the time of contracting." Ward v. Intermountain Farmers Ass'n, 907 P.2d 264, 268 (Utah 1995) (quotations omitted).

Hunger does not maintain that it supplied cylinders meeting BOR standards. Instead, it insists that there are questions of fact as to whether it was under a contractual obligation to do so. First, Hunger asserts that it never agreed to accept the BOR specifications because paragraph one of its standard terms and conditions limited the contract to products depicted in Hunger's own drawings. We have previously rejected the argument that this paragraph "limit[s] acceptance to the terms of the offer," U.C.C. § 2-207(1), to the exclusion of the BOR specifications explicitly and repeatedly referenced in Hardie-Tynes' documents.

Hunger's next argument also relates to its drawings. It claims that the drawing submitted to illustrate the proposed design for the piston seals and rings clearly shows that the Hunger cylinders differed in fundamental ways from the BOR drawings and specifications. Pointing out that the purchase order amendments and acknowledgments referred to this drawing, Hunger contends that the parties' agreement was modified to require the production of only the cylinders depicted in that drawing.

> "It is well-settled law that the parties to a contract may, by mutual consent, alter all or any portion of that contract by agreeing upon a modification thereof. Where such a modification is agreed

-18-

upon, the terms thereof govern the rights and obligations of the parties under the contract, and any pre-modification contractual rights which conflict with the terms of the contract as modified must be deemed waived or excused."

Caven, 837 F.2d at 430 (quoting Rapp v. Mountain States Tel. & Tel. Co., 606 P.2d 1189, 1191 (Utah 1980) (footnotes omitted).

A comparison of the original contract documents with the later amendments reveals that the only conflicting provisions relate to the design of the rings and seals. Moreover, at the time these documents were sent, the parties were focusing on this aspect of the design, and were not reopening contract negotiations. Hunger's modification argument finds absolutely no support in the law or the record.

Finally, Hunger argues that the district court failed to recognize the ambiguity of the contract. "The dispositive factor" in an ambiguity analysis is "whether an examination of the entire agreement reveals more than one reasonable interpretation." Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999).

As the basis for its alternative interpretation, Hunger observes that, in responding to Hardie-Tynes's request for quotation, it stated only that the proposed cylinders would "meet your requirements," and did not specifically incorporate the drawings and specifications which accompanied the request.

-19-

Although its conduct demonstrated a belief that BOR standards were applicable, Hunger now claims that this phrase created an ambiguity.  The claim is that intended the phrase to mean an offer of cylinders that were capable of performing the required functions, but not necessarily complying with the specifications.

In context, the phrase "meet your requirements" is unambiguous, readily understood to mean that the proposed cylinders must meet the detailed BOR drawings and specifications, and not susceptible to Hunger's proposed interpretation. This court declines to "create and then construe an ambiguity." Id. at 768 (quotation omitted).

We conclude, as did the trial court, that Hunger breached the unambiguous, unconflicting terms of the documents exchanged by Hardie-Tynes and Hunger. The disparity between the negotiated terms of the parties' agreement and Hunger's performance establishes Hunger's liability for breach of contract. Summary judgment was the appropriate disposition of the breach of contract claim. [7]

---

[7]    In its appellate brief, Hunger claims that Hardie-Tynes is not entitled to recover for breach of contract even if the cylinders were out of compliance with the terms of the contract.  Citing U.C.C. § 2-607(2), Hunger argues that Hardie-Tynes waived the right to enforce the contract by accepting the cylinders with knowledge of their nonconformity.  Hunger makes this argument for the first time on appeal, and we do not consider claims not first presented to the district court.  See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992)

(continued...)

## C.    Amount of Judgment

Hunger also appeals the amount of assessed damages and the award of attorneys' fees.  The negotiated terms of the parties' writings do not address these issues.

### 1.    Damage Award

Generally, "[t]he methodology a district court uses in calculating a damage award, such as determining the proper elements of the award or the proper scope of recovery, is a question of law" which we review de novo.          Southern Colo. MRI, Ltd. v. Med-Alliance, Inc.      , 166 F.3d 1094, 1100 (10th Cir. 1999).  In this case, however, the parties stipulated that they "intended to resolve issues of damages" after the district court entered partial summary judgment on issues of liability, Joint App. at 272, and requested the court to "award and enter judgment

---

[7](...continued)
       We note in passing, however, that the argument appears to have no merit. Hunger twice gave false assurances that the cylinders complied with BOR requirements.  Section 2-608 of the U.C.C. provides that a buyer

> may revoke his acceptance of a lot . . .whose non-conformity
> substantially impairs its value to him if he has accepted it
>  (a) on the reasonable assumption that its non-conformity would be
> cured and it has not been seasonally cured; or
>  (b) without discovery of such non-conformity if his acceptance was
> reasonably induced either by the difficulty of discovery before
> acceptance or by the seller's assurances.

for damages in favor of Hardie-Tynes and against Hunger," id. at 71. The district court entered judgment based on the stipulation.

Later, Hunger filed a motion asserting that $19,262 was improperly included in the damage calculation. Hunger argued that this amount is recoverable only as an indemnity, not an element of compensatory damages, because it represents Hardie-Tynes' settlement payment to Murphy for replacement of the damaged cylinder. The district court refused to alter or amend the judgment amount. We review this post-judgment ruling under an abuse of discretion standard. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir.1997).

The plain language of the parties' stipulation establishes the amount of damages: it set out a lump sum for "compensatory damages," without any separate provision or reservation regarding amounts paid to Murphy. In entering into the stipulation, Hunger waived the right to attack the amount of the damage award. See O'Rourke v. City of Norman, 875 F.2d 1465, 1475 (10th Cir. 1989); see also Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 526 (10th Cir. 1992) ("It is uncontested that a party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment.") (quotation omitted). Accordingly, the district court did not abuse its discretion in denying Hunger's post-judgment motion.

-22-

## 2. Award of Attorneys' Fees

We review de novo the legal analysis underlying the district court's decision concerning attorney fees. See Chesapeake Operating, Inc. v. Valence Operating Co. , 193 F.3d 1153, 1157 (10th Cir. 1999). Here, the district court based its award of fees on a boilerplate provision of Hardie-Tynes' purchase order form.[8] Under the terms of U.C.C. § 2-207(2)(b), this is an additional term inserted in an acceptance which may become part of the Hardie-Tynes/Hunger contract unless it constitutes a material alteration. [9] "Terms which 'materially alter' a contract include those which result in surprise or hardship to the parties." Seatex , 126 F.3d at 1284 n.12 (quoting U.C.C. § 2-207 cmt. 4).

Because of its blanket determination that all terms of the Hardie-Tynes' contract controlled the parties' transaction, the district court did not conduct an analysis of whether the attorneys' fees term constituted a material alteration

---

[8]    The provision states that "[i]n the event that Buyer commences litigation or arbitration upon Seller's default to enforce the terms hereof, Seller shall be liable for the reasonable costs and attorney's fees incurred by Buyer in pursuing such action or proceeding." Joint App. at 372, ¶16.

[9]    As discussed above, Hardie-Tynes' acceptance did not serve as an express limitation of acceptance to the terms of the offer, see U.C.C. § 2-207(2)(a), and Hunger's confirmation did not amount to an express objection to Hardie-Tynes' term, see § 2-207(2)(c).

of the parties' agreement. Accordingly, we remand this issue for the district

court's consideration. [10]

_____

[10] We note that, under conventional U.C.C. analysis, "whether an addition to a contract constitutes a material alteration . . . depends on the unique facts of every case. Determining whether a term results in surprise or hardship requires the trial court to make a factual evaluation of the parties' position in each case." American Ins. Co. v. El Paso Pipe & Supply Co., 978 F.2d 1185, 1190 (10th Cir. 1992) (citations and quotation omitted). The Utah Supreme Court, however, has held that "[t]he addition of a provision for attorneys' fees alters the offer materially and thus does not fall within the 'additional or different terms' which the statute renders acceptable by mere silence on the part of the offeror." Johnson Tire Serv., Inc. v. Thorn, Inc., 613 P.2d 521, 523 (Utah 1980) (quoting Utah Code Ann. § 70A-2-207(1).

The record before us provides no information on the issue of "what state's law controlled the formation of the contract." Seatex, 126 F.3d at 1284. We leave the matter to the district court on remand.

**CONCLUSION**

We AFFIRM the district court's entry of summary judgment on liability issues and its award of damages. We REVERSE the award of attorneys' fees and remand the case for further proceedings consistent with this order and judgment.


Entered for the Court


Robert H. Henry
Circuit Judge