**COASTAL INDUSTRIES, INC., a corporation, Plaintiff-Appellant, Cross-Appellee,**

v.

**AUTOMATIC STEAM PRODUCTS CORP., Defendant-Appellee, Cross-Appellant.**

No. 80–7728.

United States Court of Appeals, Fifth Circuit. Unit B

Aug. 28, 1981.

Sikes, Kelly, Edwards & Bryant, P. C., John W. Kelly, III, Selma, Ala., for plaintiff-appellant, cross-appellee.

Michael J. Klosk, New York City, Joseph W. McDowell, Selma, Ala., for defendant-appellee, cross-appellant.

Before HILL, FAY and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The sole issue in this appeal is whether an arbitration clause is part of the contract of sale of four commercial pressing machines from Automatic Steam Products Corporation (hereinafter referred to as "Automatic"), a New York corporation, to Coastal Industries, Inc. (hereinafter referred to as "Coastal"), an Alabama corporation. Immediately after delivery, the machines proved unsuitable for the pressing needs for which they were purchased. Coastal filed suit in the United States District Court for the Southern District of Alabama seeking damages for breach of express warranty, implied warranty for fitness for a particular purpose and implied warranty of merchantability, since it allegedly told Automatic that the machines were needed to press pants to meet government specifications. In response, Automatic applied for a stay of proceedings under 9 U.S.C. § 3 alleging the existence of an arbitration agreement between the parties and, a short time later, it requested arbitration through the American Arbitration Association. This action prompted Coastal to seek a permanent stay of arbitration on grounds that the parties had not contracted to arbitrate their disputes.

Both parties agree that arbitration was never discussed during negotiations or at the time of the oral purchase order. The order for the four pressing machines at a unit price of $22,400.00 was placed by a telephone call from Alabama, where Coastal manufactures apparel, to New York, the manufacturing headquarters for Automatic. Depositions filed by the appellant indicate that no terms of sale other than price, payment and delivery were addressed prior to

the order. One month later, Coastal received an invoice from Automatic which it paid in full. The machines were delivered to Alabama and put in operation some two months after the purchase order. Shortly thereafter Coastal realized that the machines did not meet its requirements.

Contending that the warranty claims are arbitrable, Automatic points to an arbitration clause appearing on the back side of the invoice sent to Coastal. The document was labeled "Customer Invoice" in red ink at the bottom of its face. All other language was in blue print. The only notice to the customer of the terms contained on the reverse side was a statement in small print at the bottom of the document's face that "This invoice constitutes the entire contract between the seller and the buyer. For terms see reverse side."

Among the fourteen or fifteen odd provisions on the invoice's back side were four important clauses addressing choice of law, arbitration, integration of terms and modes of acceptance. According to these conditions the agreement was to be governed by New York law and all controversies arising from the sale were committed to arbitration according to rules promulgated by the American Arbitration Association. Under its integration and merger clause, the invoice constituted the entire agreement between the parties. Finally, a presumption of the buyers' assent to terms stated therein would result in several ways, including express acknowledgement, acceptance of delivery of the goods, or retention of the invoice without disavowal for five days after its receipt.

The district court found that the invoice terms embodied the sales contract, because Coastal accepted delivery of the goods, retained the invoice for more than five days after receiving it, and paid the invoice in full according to its tenor, thereby assenting to Automatic's invoice provisions. It was the district court's conclusion that while there was no express acknowledgement of the contract, there was acceptance through conduct. By order of September 3, 1980, Automatic's motion to stay further proceedings pending arbitration was granted, Coastal's motion for a permanent stay of arbitration was denied and the parties were ordered to proceed to arbitration. Coastal filed this appeal from the portion of the district court's order granting the stay of proceedings.[1] A cross-appeal from the judge's refusal to grant Automatic's additional motion to dismiss for lack of personal jurisdiction was also filed, but at oral argument Automatic conceded that *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 198–202 (5th Cir. 1980), in which jurisdiction over an out-of-state manufacturer was upheld, foreclosed its argument on appeal.

Coastal is required to submit its warranty grievances to arbitration only if, under the applicable state law, the arbitration clause became a part of the sales contract. In this diversity action, as in all diversity cases, the issue of which state's substantive law governs becomes a threshold concern. The invoice provision that dictated the choice of New York law was honored by the district judge. As we perceive the problem, we are faced with two "additional terms." Before we can decide if the arbitration clause became part of the contract, which is a ques-

1. Both an order staying an action pending arbitration and an order staying arbitration, though interlocutory, are appealable under 28 U.S.C. § 1292(a)(1) as orders similar to an injunction if (1) the action in which the order was made is an action which would have been an action at law prior to the fusion of law and equity; and (2) the stay was sought to permit the prior determination of an equitable defense. Both requirements are satisfied here. *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 167–68 n. 2 (5th Cir. 1979); *JS&H Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 213 n. 1 (5th Cir. 1973). Similarly, an order compelling arbitration is a final, appealable order under 28 U.S.C. § 1291. *Par-Knit Mills v. Stockbridge Fabrics*, 636 F.2d 51, 53 (3d Cir. 1980); *City of Naples v. Prepakt Concrete*, 494 F.2d 511, 512 (5th Cir. 1974). In stating that we have jurisdiction, we do not infer that the district judge was correct in issuing the order compelling arbitration, in light of the fact that Automatic initiated no proceeding to compel such relief.

tion of state law,[2] we must resolve whether the choice of state law provision is incorporated within the parties' agreement.

Both Alabama and New York have adopted statutes patterned after U.C.C. § 2–207 which sets forth the variant acceptance principles relevant here.[3] Section 2–207 covers situations in which either the parties have reached a prior oral contract and any writings serve only as a memorialization or confirmation of that contract or the prior negotiations did not establish a contract and the writings themselves constitute the offer and/or acceptance.[4] Within the provision are two sets of rules governing the operation of an acceptance containing additional terms, one which applies when both parties are merchants and another to be employed when one or both of the parties are nonmerchants. We are directed by the former collection of rules in this case, since both Coastal and Automatic are merchants, in that each company holds itself out as having knowledge or skill peculiar to the practices or goods involved in the finishing phase of the garment industry.[5] With respect to business deals involving only merchants, Section 2–207 states:

(2) the additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

 (a) the offer expressly limits acceptance to the terms of the offer;

 (b) they materially alter it; or

 (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Thus, unless we conclude that one of these two additional terms is a material alteration, each is automatically included in the agreement.

 Generally, a material alteration is an addition or change to the contract which would result in surprise or hardship if incorporated without express awareness by the other party. *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1977), citing U.C.C. § 2–207, Comment 4. In this case, the choice of law provision did not materially alter the nature of the obligation and therefore it became incorporated into the merchants' contract. Alabama and New York are the only states with a significant relationship to this transaction, so the parties must have contemplated that, absent a choice, the law of one of the two states would have controlled anyway. To hold that New York law applies rather than Alabama law will not cause prejudice or

---

As the text of this opinion reflects, we deem it unnecessary to reach this issue.

**2.** *Supak & Sons Mfg. Co. v. Pervel Industries, Inc.*, 593 F.2d 135, 137 (4th Cir. 1979). *Fairfield-Noble Corp. v. Pressman-Gutman Corp.*, 475 F.Supp. 899, 902 (S.D.N.Y.1979).

**3.** U.C.C. § 2–201 is often discussed in comparison with U.C.C. § 2–207 by lawyers and judges faced with variant acceptance issues. Automatic refers to this section in its brief. Most authority concludes that U.C.C. § 2–201 is not apposite to the problem caused by additional terms in a written confirmation. The section's limited effect is to remove the statute of frauds as a bar to enforcement of an oral agreement if the merchant against whom enforcement is sought receives a written confirmation from another merchant and, while "having reason to know its contents," fails to object to its terms within ten days of receipt. *See Itoh & Co. (America) Inc. v. Jordan Intern. Co.*, 552 F.2d 1228, 1233 (7th Cir. 1977).

**4.** The parties disagree on when the contractual arrangement was reached. Coastal contends that an invoice cannot be the representation of two parties' contractual intent, since it is merely a detailed statement of the nature, quantity and cost of the goods purchased. We disagree. A contract is any reflection of the agreement between the parties as found in their language, course of dealing or performance. U.C.C. § 1–201. The invoice is at least an addition to the terms of the oral agreement, if it is not the first contract between Automatic and Coastal. We need not decide the precise point at which the contract arose, however, because in any case the effect of an additional term is the same under Section 2–207.

**5.** U.C.C. § 2–104 defines a "merchant" as one "who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or . . . who by his occupation holds himself out as having such knowledge or skill."

hardship to Coastal.[6] Since both states have adopted a statute mirroring Section 2–207, the result under either would be substantially the same. The application of New York law comports with the objective intent of the parties and due process in that New York law bears a reasonable relation to the sales transaction in issue.[7]

█ Whether an arbitration clause is a material alteration is a determination which is made on a state-by-state basis. *Supak & Sons Manufacturing Co. v. Pervel Industries, Inc.*, 593 F.2d 135, 136 (4th Cir. 1979). New York has so consistently held that the arbitration provision materially changes an agreement that in *Fairfield-Noble Corp. v. Pressman-Gutman Co.*, 475 F.Supp. 899, 902 (S.D.N.Y.1979) the district court reaffirmed the "New York Rule" that, for purposes of Section 2–207, the unilateral insertion of an arbitration clause constitutes a *per se* material alteration of a contract. *Fairfield-Noble* relied on *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 413, 380 N.E.2d 239, 241 (N.Y. App.1978) as authority for the rule that these clauses are included in a sales contract only if *expressly* assented to by both parties. *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 408 N.Y.S.2d at 413, 380 N.E.2d at 242 (emphasis added).

█ By requiring evidence of an express agreement before permitting the inclusion of an arbitration provision into the contract, a court protects the litigant who will be unwillingly deprived of a judicial forum in which to air his grievance or defense. In its order of September 3, 1980, the trial court concedes that the record shows no express agreement by Coastal to the terms imposed by Automatic in the invoice. Indeed, Coastal simply retained and used the goods without comment, until it was apparent that the machines would not properly perform their functions. Coastal's acceptance of the arbitration term was inferred by the court, though, from Coastal's retention of the invoices and receipt of the machines, conduct which was specified by the invoice as a method of acceptance of the contract as a whole. We do not find Coastal's conduct to be express acceptance of the arbitration clause as required by *Marlene* and accordingly we reverse the judgment of the district court.

█ Unless it is shown that both parties "contemplated the use of arbitration," a New York court will not force a dispute to be heard outside the judicial forum. *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 424 N.Y.S.2d 133, 135, 399 N.E.2d 1154, 1156 (N.Y.App.1979). Express assent indicative of contemplated action, as required by *Marlene* and *Schubtex* may be established by the opposing party's signature on the main contract[8] or by conduct indicating the recipient of the contract was aware of the

**6.** Coastal relies heavily upon New York cases in its brief, so apparently it would not find the imposition of New York law to be detrimental.

**7.** Alabama law, as the law of the forum state, regulates the effect of the parties' contractual choice of law provision. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The right of parties to a contract to choose the law governing their obligations is recognized by Alabama as long as the consequences of the election are not contrary to Alabama public policy. *Craig v. Bemis Co.*, 517 F.2d 677, 680 (5th Cir. 1975); *Blalock v. Perfect Subscription Co.*, 458 F.Supp. 123, 126 (S.D.Ala.1978). The only limitation placed on a choice by the Uniform Commercial Code is that the law chosen be that of the state to which the transaction bears a reasonable relation. U.C.C. § 1–105.

**8.** Arbitration can be enforced against a party who signs a document with or without actual awareness of the arbitration provision therein. Under general contract principles, a person is *presumed* to be aware of what he signs, absent evidence of fraud, misrepresentation or deceit in the acceptance. *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1977); *Novik & Co. v. Jerry Mann, Inc.*, 497 F.Supp. 447, 449 (S.D.N.Y.1980); *Michel & Co. v. Anabasis Trade, Inc.*, 50 N.Y.2d 951, 431 N.Y.S.2d 459, 459, 409 N.E.2d 933, 933 (1980). *Cf. T&R Enterprises v. Continental Grain Co.*, 613 F.2d 1272, 1273 (5th Cir. 1980) (since documents were signed, no issue as to the making of an arbitration agreement).

clause.[9] Neither such manifestation of assent by Coastal is present here. Retention of the invoice or acceptance of the goods is not performance presupposing awareness of the arbitration clause, even though such action may be specified as a means of consenting to the contract as a whole.[10] Because this arbitration clause is a material alteration to which no express assent was given, we hold that it is not binding upon Coastal contractually. The stay of proceedings pending arbitration was erroneously entered and must be reversed. It is unnecessary to reach Coastal's procedural arguments.[11] The district court's denial of Automatic's motion to dismiss for lack of personal jurisdiction is affirmed.

AFFIRMED in part, REVERSED in part.

**9.** Arbitration cases not involving Section 2–207 illustrate that participation in the arbitration process is conduct establishing a party's awareness that he has consented to the arbitrability of the contract. *Manes Organization, Inc. v. Standard Dyeing & Finishing Co.*, 472 F.Supp. 687, 690–91 (S.D.N.Y.1979); *Atlanta Shipping Corp. v. Cheswick-Flanders & Co.*, 463 F.Supp. 614, 617 (S.D.N.Y.1978). Presumably such conduct would satisfy the "express assent" standard of Section 2–207 as well.

**10.** Acceptance of the goods and payment of their price without objection to an arbitration clause in the invoice or the written confirmation is not "unequivocal" behavior as called for by *Marlene.* In *Fairfield-Noble*, the blanket order form stated that acceptance would be inferred when the buyer paid for or accepted delivery of all or part of the goods. Six lots of fabric were ordered and received by the plaintiff buyer before it brought suit for breach of warranty. The court rejected the defendant seller's argument that by failing to timely object to the arbitration clause, the plaintiff agreed, albeit implicitly, to the clause's inclusion. Since the provision was a material alteration that was not expressly assented to, the court ruled that it was not part of the contract.

*Fair-Noble*, 475 F.Supp. at 903. *Cf. John Thallon & Co. v. M&N Meat Co.*, 396 F.Supp. 1239, 1243 (E.D.N.Y.1975) (older case stating that the acceptance of goods delivered under an order containing an arbitration provision is conduct indicative of the buyer's agreement to be bound to arbitration). Thus, where conduct is the mode of acceptance, performance evincing subjective agreement to the transfer of ownership of the goods may not be such as to explicitly assent to the arbitration clause as well. *Cf. Avila Group, Inc. v. Norma J. of Cal.*, 426 F.Supp. 537, 541–42 (S.D.N.Y.1977) (plaintiff chastised for asking court to enforce contract, while asserting the lack of agreement to arbitration clause in contract; distinguishable on grounds that acceptance was by signature, thus plaintiff was presumed to be aware of and assent to all provisions in the document he signed).

**11.** Coastal also argued that the district court had erred by compelling it to proceed to arbitration when Automatic had initiated no proceeding under 9 U.S.C. § 4 (1954) to compel arbitration.