**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

AVEDON ENGINEERING, INC., a
Colorado corporation; as assignee of
H.B.C., INC., a Colorado corporation,

      Plaintiff-Appellant,

v.

SEATEX, a New York corporation;
CONSOLTEX, a New York
corporation; THE BALSON-
HERCULES GROUP LTD., a Rhode
Island corporation and DOES 1-20,
whose true names are unknown,
inclusive,

      Defendants-Counter-
      Claimants-Appellees.

No. 96-1066

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 94-B-2561)

---

John W. Gaddis, of Grant, Bernard, Lyons & Gaddis, Longmont, Colorado, for
Plaintiff/Appellant.

Mary P. Birk, of Baker & Hostetler (Marjorie N. Sloan, of Baker & Hostetler,
with her on the brief), Denver, Colorado, for Defendants/Counter-
Claimants/Appellees.

Before **SEYMOUR**, Chief Judge, **BRORBY** and **KELLY**, Circuit Judges.

**SEYMOUR**, Chief Judge.

In this breach of contract action against Seatex,[1] Twist[2] appeals the district court's denial of a jury trial on the issue of whether its contract with Seatex included an agreement to arbitrate, and the district court's stay of litigation pending arbitration. Twist also appeals the grant of summary judgment to Seatex for Twist's failure to timely arbitrate. Because we conclude the district court erred by failing to make a choice of law determination before resolving those issues, we reverse and remand for further proceedings consistent with this opinion.

## I.

Twist was formed in 1992 to design and manufacture clothing and accessories for the snowboard industry. Twist evaluated the suitability of Seatex fabric for use in its clothing line by ordering product samples. At the time of the relevant transactions, Twist's principal place of business was Colorado and Seatex's principal place of business was New York. In a series of preliminary

---

[1]Defendant Seatex is a New York-based division of Balson-Hercules, a Rhode Island corporation. Seatex is a converter of textiles which buys fabric in a "greige," or unfinished, state and arranges for it to be dyed and finished according to specifications of commercial customers.

[2]Plaintiff Avedon Engineering, Inc., is the assignee of H.B.C., Inc., a Colorado corporation engaged in the manufacture of snowboarding apparel under the trade name Twist. In this opinion, both entities will be referred to as Twist.

transactions Twist negotiated quantity, price and fabric quality with Goebel Textiles, agent for Seatex, through telephone calls and facsimile transmissions. Twist placed its purchase orders with Goebel by facsimile transmission.

For at least three of the preliminary transactions, Seatex responded to the purchase orders by sending a standardized sales confirmation form from New York to Twist in Colorado. Some special conditions of performance were noted in small type at the bottom front of the confirmation form, among which was a notice regarding arbitration.[3] Two clauses relevant to arbitration appeared in full on the back of the form. Clause 10 provided that disputes arising out of transactions between the parties would be settled by arbitration, and clause 11 provided that future transactions between the parties would be controlled by the terms of the sales confirmation form unless superseded by a signed contract.[4]

---

[3]In relevant part the preprinted form states: "This contract is subject to all the terms and conditions on this and the reverse side hereof, including the provisions providing for ARBITRATION and EXCLUSION OF WARRANTIES." Rec., vol. I at 99.

[4]The relevant portions of the clauses state:

10. ARBITRATION: (a) Any controversy arising out of or relating to this contract or any modification or extension thereof including any claim for damages and/or rescission, shall be settled by arbitration before a panel of three arbitrators in the city of New York, (or, if applicable law requires some other place, then such other place) in accordance with the rules then obtaining of the American Arbitration Association.
(b) The parties consent to the jurisdiction of the Superior Court of the State of New York, and of the United States District Court for the

-4-

It is undisputed that the arbitration and future transactions clauses were not negotiated terms of contract. Both were inserted unilaterally by Seatex in its confirmation forms. Although Twist paid for and retained the fabric pursuant to its preliminary orders and does not dispute that it received the confirmation forms reflecting its preliminary purchases, Twist neither signed nor returned those forms.

After completing its preliminary product evaluation, Twist placed a bulk

---

Southern District of New York, for all purposes in connection with arbitration . . . .
. . . .
(d) The arbitrators shall have no power to alter or modify any express provision of this contract or to render an award which has the effect of altering or modifying any express provision hereof, provided, however, that any application for reformation of the contract shall be made to the arbitrators and not to any Court and the arbitrators shall be empowered to determine whether valid grounds for reformation exist.
(e) Arbitration proceedings must be instituted within one year after the claimed breach occurred, and the failure to institute arbitration proceedings within such period shall constitute an absolute bar to the institution of any proceedings and a waiver of all claims. Notwithstanding any law to the contrary, the determination of whether said one-year period has expired shall be made by the Court, and shall not be within the jurisdiction of the arbitrators.
. . . .
11. FUTURE TRANSACTIONS: Except to the extent that a future transaction is governed by a signed contract between two parties, the terms and conditions of this contract including without limitation, the provision for arbitration shall govern all future transactions.

Rec., vol. I at 100.

order in April 1993 for specially treated waterproof fabric for its 1993-94 line of

clothing. As it had with each of its preliminary transactions, Twist placed this

order by facsimile transmission to Seatex's agent. Twist made one alteration to

this purchase order: in May of 1993, it increased the size of the order by facsimile

transmission. Seatex alleges that it confirmed this order by sales confirmation

form No. 2155. Twist disputes whether it received confirmation form No. 2155,

and further argues that, even if the form was sent, it was not timely.[5] Twist did,

however, accept delivery in Colorado and pay for the fabric ordered in April and

May of 1993.

Twist used the fabric to manufacture its 1993-94 line of clothing. By

December 1993, Twist began to receive reports that a special urethane coating

designed to waterproof the fabric was peeling. Clothing manufactured from this

fabric was returned to Twist as defective. After efforts to resolve the problem

with Seatex proved unavailing, Twist brought this suit in Colorado state court in

1994,[6] seeking damages for breach of contract, breach of express and implied

---

[5]Because the only form proffered by Seatex as evidence of the April transaction, rec., vol. I at 104, reflects the increased order for 200 denier oxford flat fabric placed in May, Twist contends there is no evidence form 2155 was timely sent by Seatex as required by section 2-207(1) of the UCC, id. at 137. Mr. Goebel, Seatex's agent, confirmed that Twist did not increase its order until May 12, 1993. Id. at 145. Mr. Goebel further attested that by June 3, 1993, he had not yet received from Seatex an acknowledgment of the April contract. Id.

[6]Twist originally filed suit in August 1994 in California, then its principal place of business. That suit was dismissed for lack of jurisdiction.

warranties, negligence, negligence per se, negligent misrepresentation, strict products liability and deceptive trade practices.

Seatex removed the action to federal court and contended the arbitration clause contained in the unsigned sales confirmation forms became part of the April/May 1993 contract by operation of section 2-207 of the Uniform Commercial Code (UCC). Seatex accordingly made motions to stay litigation and to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3, 4. Twist responded that section 2-207 prohibits inclusion of the arbitration term because it materially alters the contract. Moreover, Twist argued that whether there is a material alteration of a contract presents a question of fact and requested a jury trial on that issue as provided in 9 U.S.C. § 4.

The district court concluded that the future transactions clause in the preliminary sales confirmation forms negated any issue of fact regarding Twist's receipt of the sales confirmation form No. 2155. The court then concluded under the facts presented and the prevailing trade usage in the textile industry that arbitration was not a material alteration and was therefore included in the Twist/Seatex contract. The district court granted a stay of litigation pending arbitration and retired the case from its active docket.

Six months later, Seatex brought a motion to reactivate the case and a motion for summary judgment on all claims for Twist's failure to timely arbitrate

according to the terms in the arbitration clause. The district court ruled that its earlier legal analysis on inclusion of the arbitration clause applied with equal force to all of the terms within the clause, and that Twist was bound by conditions in the arbitration clause which required filing of claims within one year of breach with the American Arbitration Association (AAA) in New York. The court concluded that Twist had waived all claims by failing to timely make that filing and granted summary judgment to Seatex. Twist now appeals the initial denial of a jury trial and grant of a stay,[7] and the final grant of summary judgment to Seatex.

## II.

"We review a district court's grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 796 (10th Cir. 1995). We also review de novo a district court's decision to deny a jury trial on the factual question of whether the parties agreed to arbitrate. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 & n.9 (3d Cir. 1980).

---

[7]Under the Federal Arbitration Act (FAA), Twist could not immediately appeal the district court's interlocutory order granting a stay of litigation pending arbitration. 9 U.S.C. § 16(b).

Before granting a stay of litigation pending arbitration, a district court must determine that an agreement to arbitrate exists. 9 U.S.C. §§ 3, 4; Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754 (5th Cir. 1993); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987). The existence of an agreement to arbitrate "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995). When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement. Par-Knit Mills, 636 F.2d at 54 & n.9.

Both Twist and Seatex agree that section 2-207 of the UCC controls the determination of the existence of an agreement to arbitrate.[8] Section 2-207

---

[8]Section 2-207 provides:
    (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
    (2) The additional terms are to be construed as proposals for addition to the contract. *Between merchants* such terms become part of the contract unless:
        (a) the offer expressly limits acceptance to the terms of the offer;
        (b) they *materially alter it*; or
        (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

dictates that additional terms inserted unilaterally in a confirmation form become

part of a contract between merchants[9] unless: an offer is made expressly

conditional to its terms, § 2-207(2)(a); the additional terms are expressly objected

to, § 2-207(2)(c); or *the terms cause a material alteration to the contract*, § 2-

207(2)(b).[10] Twist neither limited acceptance of any of its offers to their

---

   (3) Conduct by both parties which recognizes the existence of a
contract is sufficient to establish a contract for sale although the
writings of the parties do not otherwise establish a contract. In such
case the terms of the particular contract consist of those terms on
which the writings of the parties agree, together with any
supplementary terms incorporated under any other provisions of this
Act.

U.C.C. § 2-207 (1994) (emphasis added). Both Colorado and New York have
adopted section 2-207 in its entirety, COLO. REV. STAT. ANN. § 4-2-207 (Bradford
Pub. Co. 1992); N.Y. U.C.C. LAW § 2-207 (McKinney 1997)).

[9]A merchant is one "who deals in goods of the kind or otherwise by his
occupation holds himself out as having knowledge or skill peculiar to the
practices or goods involved in the transaction." U.C.C. § 2-104 (1994). Twist
admits it is an "acknowledged leader in designing, manufacturing and selling
apparel in the international snowboard apparel market." Rec., vol. I at 108.
Twist is thus a merchant in the apparel industry.

[10]Seatex also argues, and the district court agreed, that subsection (3) of
section 2-207 provides an alternate basis for holding that the parties have agreed
to arbitrate disputes. We disagree. Seatex contends the arbitration and future
transactions clauses in the preliminary sales confirmation forms control this
dispute. Seatex characterizes those forms as confirming "previous discussions
concerning the terms of the specific sale." Rec., vol. I at 161. Seatex also states
that "[i]t should go without saying that offer-and-acceptance precedes the sending
of a contract confirmation." Id. at 165. In such a situation, 2-207(3) would not
apply "for it contemplates contract formation through performance, and here the
contract was already formed . . . prior to performance." 1 JAMES J. WHITE &
ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 1-3, at 25-26 (4th ed. 1995).

terms[11] nor expressly objected to the terms in the preliminary sales confirmation forms. Thus, unless inclusion of the arbitration clause caused a material alteration[12] to the contract, arbitration became part of the Twist/Seatex preliminary sales contracts, and by operation of the future transactions clause,[13] became part of the April/May 1993 contract.

The first step in evaluating whether the arbitration term was included in the Twist/Seatex contract should be a determination of what state's law controlled the formation of that contract. Coastal Indus., Inc. v. Automatic Steam Prods. Corp., 654 F.2d 375, 377-78 (5th Cir. 1981). The district court did not perform such an analysis, despite Twist's assertion that Colorado law should be applied. The court was apparently persuaded by Seatex's argument, rec., vol. I at 42 n.10, that no choice of law analysis was necessary because both Colorado and New York, the

---

[11]Twist suggested in its brief in opposition to Seatex's motion for summary judgment that it limited its April 20 order expressly to its terms. However, Twist did not raise this issue in the district court when it argued that arbitration materially altered its contract with Seatex. The district court concluded that Twist did not make its offer expressly limited to its terms, and there is no evidence the district court's determination was erroneous.

[12]Terms which "materially alter" a contract include those which result in surprise or hardship to the parties. U.C.C. § 2-207 cmt. 4 (1994). The official comments to section 2-207 give some examples of terms which can cause surprise and hardship, but arbitration is not among them. Id.

[13]Because we conclude infra that the district court erred when it failed to make a choice of law determination, we do not separately address whether the future transactions clause independently constitutes a material alteration under section 2-207. That issue should be considered, if necessary, on remand.

relevant states, have enacted identical versions of section 2-207 of the UCC and because any New York decisional law diverging from the general application of the UCC would be preempted by the FAA.

It is true that both states have adopted identical versions of section 2-207, and we agree that choice of law analysis is generally unnecessary if the relevant states have enacted identical controlling statutes. However, because we note at least two issues which we think Colorado and New York would analyze differently--the materiality of the arbitration clause and the one-year limitations period required under the arbitration clause--a choice of law determination is necessary. Moreover, we conclude the FAA does not preempt the state law issue of whether the parties have agreed to arbitrate their contract dispute.

## A. Materiality of Arbitration Terms

Colorado has not directly addressed whether inclusion of arbitration as an additional term materially alters a contract, and thus we presume it would follow a conventional UCC analysis on this issue. Arguably, arbitration as an additional term would "'materially alter' [a contract] and thus not survive 2-207(2)." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 1-3, at 27 (4th ed. 1995). However, the burden of showing that arbitration is a material alteration is on the party opposing its inclusion because section 2-207 presumes

inclusion of additional terms between merchants.  <u>Comark Merchandising, Inc. v. Highland Group, Inc.</u>, 932 F.2d 1196, 1201 (7th Cir. 1991).[14]

New York does not conform to typical UCC analysis, at least with respect to the burden of proof that arbitration is a material alteration when introduced as an additional term.  New York presumes that arbitration is material; the presumption effectively carries the initial burden of the party opposing arbitration as a material alteration.  New York's highest court has stated that "the inclusion of an arbitration agreement materially alters a contract for the sale of goods, and thus, pursuant to section 2-207 (subd. (2), par. (b)), it will not become a part of such a contract unless both parties explicitly agree to it."  <u>Marlene Indus. Corp. v. Carnac Textiles, Inc.</u>, 380 N.E.2d 239, 242 (N.Y. 1978).  Although the proponents

---

[14]Usage of trade could be relevant to the determination of material alteration because it "may define a material alteration under section 2-207, and thus determine whether a proposed term in a 'battle of the forms' will be given effect."  1 WHITE & SUMMERS, § 3-3, at 119.  If Colorado law applies, the district court will have to decide in the first instance how that state would deal with the burden of proof issue on trade usage.  Some courts, purporting to apply general UCC law, have concluded the burden of showing that arbitration is *not* a trade usage is with the party opposing the addition of arbitration.  <u>Cf.</u> <u>Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.</u>, 654 N.E.2d 848, 854 (Ind. Ct. App. 1995) (proponents of arbitration not required to put forward evidence of trade usage when party opposing inclusion alleges only its actual surprise in opposition to inclusion).  Other courts have concluded that after the party opposing inclusion of an arbitration provision has made a prima facie showing of hardship or surprise, the burden shifts to the party urging inclusion to prove trade usage.  <u>Cf.</u> <u>Comark Merchandising, Inc. v. Highland Group, Inc.</u>, 932 F.2d 1196, 1202 (7th Cir. 1991) (party urging inclusion should prove trade usage to show surprise was unreasonable).

of arbitration as trade usage may in some limited circumstances make a sufficient

showing to alter this result,[15] application of New York law in the absence of such

---

[15]New York has held that trade usage can, in some limited circumstances, be used to supplement express terms of a contract.  See Schubtex, Inc. v. Allen Snyder, Inc., 399 N.E.2d 1154, 1156 (N.Y. 1979) (acknowledging possibility that trade usage, with appropriate course of dealing between parties showing express assent, could incorporate an arbitration term into the parties' agreement); compare Woodcrest Fabrics, Inc. v. B & R Textile Corp., 464 N.Y.S.2d 359, 360 (N.Y. App. Div. 1983) (Sandler, J.P., concurring) (accepting arbitration as trade usage upon receipt of affidavits of two independent brokers) with Jones Apparel Group, Inc. v. Petit, 426 N.Y.S.2d 739, 740 (N.Y. App. Div. 1980) (acknowledging possibility that arbitration could be included in contract absent express agreement upon proof of trade usage sufficient to show entire industry is bound by practice, but deciding that proof was insufficient to carry proponent's burden on trade usage).
    Seatex argued below that an arbitration clause is not a material alteration because arbitration is customarily used in the textile industry.  If New York law applies, we disagree that Seatex's proof on this point was sufficient to show that arbitration became part of the Twist/Seatex contract *as a matter of law*.  In New York the burden is on the proponent of arbitration to establish that arbitration is not a material alteration.  Seatex offered two trade codes as proof of the textile industry's trade practice of arbitrating disputes.  Rec., vol. I at 56, 87.  However, "[t]o prove [trade usage], a party must usually call on an expert."  1 WHITE & SUMMERS § 3-3, at 124.  A trade code, by itself, is insufficient to show the required regularity of observance and expectation of use within the industry.  Id. at n.50.  Seatex also offered the affidavit of one of its vice presidents, rec., vol. I at 54, and the affidavit of Seatex's agent, Mr. Goebel, id. at 145.  Attestations offered by Seatex employees that arbitration is the trade practice are insufficient to prove trade usage.  H & W Indus., Inc. v. Occidental Chem. Corp., 911 F.2d 1118, 1122 (5th Cir. 1990).
    To establish trade usage, more is required than "'[a] vague, unspecific reference . . . to the effect that "in the textile industry arbitration is the usual accepted method of resolving disputes."'"  Diskin v. J.P. Stevens & Co., Inc., 836 F.2d 47, 51-52 (1st Cir. 1987) (quoting Jones Apparel Group, 426 N.Y.S.2d at 740).  Moreover, even if the proof offered by Seatex had been sufficient to show a general textile industry practice of arbitration, a question of fact would remain as to whether an apparel merchant like Twist is subject to the trade usage of the textile industry, whether Twist's reliance on the advice and guidance of Goebel defeats the

a showing presumptively requires the conclusion that arbitration is a material alteration and thus would not become part of the Twist/Seatex contract.

## B. One-Year Limitations Period

There is another potentially significant difference between Colorado and New York law. The arbitration clause at issue in this case not only requires arbitration, but also requires it to be instituted within one year. New York has adopted the general UCC provision permitting parties to contractually agree to alter the limitations period to a minimum of one year. N.Y. U.C.C. LAW § 2-725(1) (McKinney 1997). It is thus possible New York would conclude that unilateral inclusion of such a one-year limitations period as an additional term in an otherwise valid agreement to arbitrate would not constitute a material alteration; such a reduction in limitations periods might reasonably be expected whenever a party contracts in New York. Cf. Shur-Value Stamps, Inc. v. Phillips Petroleum Co., 50 F.3d 592, 599 (8th Cir. 1995) (concluding a one-year limitations period inserted as an additional term in a confirmation form is deemed by the legislature to be reasonable and customary and does not impose surprise and hardship within the meaning of section 2-207 *if* the limitations period is

application of trade usage, or whether the terms of this arbitration clause are consistent with trade usage.

permitted by state law).

Colorado, on the other hand, has not adopted the general UCC provision permitting parties to contractually reduce their limitations period. COLO. REV. STAT. ANN. § 4-2-725 (Bradford Pub. Co. 1992). In Colorado, the state limitation period for "[a]n action for breach of any contract for sale . . . may not be varied by agreement of the parties." Id. § 4-2-725(1). Parties in Colorado would not expect that limitations periods would be reduced below the statutory minimum. Although arbitration is arguably not an "action"[16] to which Colorado's prohibition against variations in limitations periods applies, id., the prohibition does not have to be enforceable against arbitration clauses to "surprise" Twist as a party contracting under Colorado law. If Colorado law applies, it is likely the limitations period would be excluded from the Twist/Seatex contract as a material alteration under section 2-207(2)(b).

## C. Preemption

To obviate the potentially substantial impact of state law on the determination of whether the parties agreed to arbitrate, Seatex argues that New

---

[16]Under the Colorado UCC, an "'[a]ction' in the sense of a judicial proceeding includes recoupment, counterclaim, setoff, suit in equity, and any other proceedings in which rights are determined." COLO. REV. STAT. ANN. § 4-1-201(1) (Bradford Pub. Co. 1992).

York law would be inapplicable in any event because the FAA preempts its application. Seatex Br. at 21. In particular, Seatex contends the New York rule on arbitration always prohibits inclusion of arbitration clauses under section 2-207 and therefore constitutes treatment of arbitration terms different from that accorded to other contract terms. The application of a rule to prohibit formation of agreements to arbitrate contravenes the FAA. 9 U.S.C. § 2 (Written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); see Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with th[e] requirement[s] of § 2" of the FAA and is therefore preempted.).

However, we conclude as has at least one other circuit that the FAA does not preempt New York's interpretation of section 2-207(2)(b) to determine whether arbitration materially alters a contract. See Supak & Sons Mfr. Co. v. Pervel Indus., Inc., 593 F.2d 135, 137 (4th Cir. 1979) (rejecting FAA preemption of state law where law of either North Carolina or New York demands conclusion that arbitration term is a material alteration under section 2-207(2)(b) which cannot become part of a contract by inclusion in a confirmation form without express assent of the contracting parties); cf. Eassa Properties v. Shearson

Lehman Bros., Inc., 851 F.2d 1301, 1304 n.7 (11th Cir. 1988) (FAA does not preempt Uniform Partnership Act because "state law governs the question of whether . . . an agreement [to arbitrate] exists in the first instance").[17]

In enacting the FAA, "'Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.'" Perry, 482 U.S. at 489 (quoting Southland Corp. v. Keating, 465 U.S. 1, 16 (1984)).  There is a "clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  Id. (quoting 9 U.S.C. § 2).

But the FAA was not enacted to force parties to arbitrate in the absence of an agreement.  Congress' concern "'was to enforce private agreements into which parties had entered.'"  Id. at 490 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked.  First Options,

---

[17]Without addressing FAA preemption, the First Circuit applied New York UCC law in analyzing parties' agreement to arbitrate.  See Diskin, 836 F.2d at 50-52 (arbitration does not become part of contract under New York law unless expressly assented to, and custom of textile trade to resolve disputes through arbitration cannot substitute for the required specific assent to arbitration).  Similarly, the Third Circuit accepted the parties' concession that arbitration was a material term for purposes of section 2-207 analysis without analyzing FAA preemption.  See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 53 n.6 (3d Cir. 1980).

115 S. Ct. at 1924 ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration."). We look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached. Perry, 482 U.S. at 492 n.9 ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); Schulze and Burch Biscuit Co. v. Tree Top, Inc., 831 F.2d 709, 715 (7th Cir. 1987) (applying Illinois state law to determine whether arbitration as additional term is a material alteration); Coastal Indus., 654 F.2d at 377-78 & n.2 (5th Cir. 1981) (holding whether arbitration clause became part of contract is question of state law).

Invoking the FAA, some courts have declined to apply any specific state's laws of contract formation, like section 2-207, to arbitration clauses. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987) (holding the FAA creates federal substantive law, and stating "whether [a party] is bound by [an] arbitration clause of [a] sales confirmation form[] is determined under federal law, which comprises generally accepted principles of contract law"); Hart Ski Mfg. Co. v. Maschinenfabrik Hennecke, 711 F.2d 845, 846 (8th Cir. 1983) (federal law governs whether parties have agreed to arbitrate). We are not persuaded FAA preemption reaches so broadly.

In applying state law, "[a] court may not . . . construe [an arbitration] agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." Perry, 482 U.S. at 492 n.9. However, it is only when "[a] state-law principle . . . takes its meaning precisely from the fact that a contract to arbitrate is at issue" that the state law will be preempted by the FAA. Id. Section 2-207 is a general principle of state law controlling issues of contract formation. As a general rule, section 2-207 proscribes binding parties to any important non-negotiated terms of contract. Presumptions against including terms, such as the New York rule, are routinely applied to any term considered significant to the contracting parties. U.C.C. § 2-207 cmt. 4 (1994) (warranties of merchantability or fitness are material alterations under 2-207(2)(b)). Section 2-207 does nothing under its general, or its specific New York application, to restrict enforcement of agreements to arbitrate to which the parties have expressly assented. Supak, 593 F.2d at 137. Such a general rule of contract law is not an impermissible "state statute[] [or] decision[] which limit[s] arbitration agreements with rules not applicable to other contracts." Medical Dev. Corp. v. Industrial Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973).

There is a world of difference between a state law rule that requires special preconditions for enforcement of arbitration clauses not required for any other

-20-

term of contract (which would be preempted by the FAA), see, e.g., Doctor's

Assocs., Inc. v. Casarotto, 116 S. Ct. 1652, 1657 (1996) (FAA preempts a

Montana state statute prohibiting enforcement of arbitration agreements which

fail to include a special notice provision not required for any other terms of

contract.); Perry, 482 U.S. at 490, 492 (holding preempted a California Labor

Code provision permitting an action at law to be maintained despite existence of

parties' agreement to arbitrate), and a rule of law that prohibits enforcement of

any important term of contract without the express agreement of the parties and

then concludes that arbitration is among the group of terms considered important

enough to require such express assent, Saturn Distribution Corp. v. Williams, 905

F.2d 719, 723 (4th Cir. 1990) (state law which prohibits formation of

nonnegotiable agreement compelling arbitration is preempted by the FAA,

whereas section 2-207 as a general rule of contract formation is not).

Accordingly, we conclude that state law principles of Colorado or New

York can, at a minimum, impact the interpretation of both the materiality of the

arbitration clause itself and also the terms contained within that clause. Those

varying interpretations are not preempted by the FAA. The district court should

have begun its analysis with a choice of law determination. Its failure to do so

affected all of the court's subsequent determinations regarding the arbitration

term. We therefore reverse and remand for the district court to make the choice

of law determination.  E.g., Rocky Mtn. Helicopters, Inc. v. Bell Helicopter Textron, Inc., 24 F.3d 125, 127 (10th Cir. 1994).[18]

## III.

We **REVERSE** the district court's stay of litigation and remand this case for a choice of law determination and for further proceedings consistent with this opinion.  Because we reverse the district court's stay pending arbitration, we do not reach the questions of whether arbitration became part of the Twist/Seatex contract as a matter of law or whether the district court properly granted summary judgment to Seatex for Twist's failure to timely arbitrate.  We leave those issues to the district court on remand.

---

[18]It would be inappropriate to resolve this choice of law issue by simply applying the choice of law clause Seatex inserted as an additional term in its sales confirmation form.  Rec., vol. I at 100 (clause 9 of the confirmation form).  The choice of law provision may itself constitute a material alteration, particularly if the choice of state law is determinative of whether other terms become part of the contract.  Compare Coastal Indus., Inc. v. Automatic Steam Prods. Corp., 654 F.2d 375, 378-79 (5th Cir. 1981) (applying choice of law provision inserted as additional term in sales confirmation form when its application is immaterial to analysis of the contract), with Galaxy Int'l, Inc. v. White Stores, Inc., 88 F.R.D. 311, 320-21 (W.D. Pa. 1980) (under Pennsylvania law, choice of law term added as additional term is a material alteration).