Donna GRATZER, Plaintiff,

v.

YELLOW CORPORATION, Defendant.

No. CIV.A.03–2363–CM.

United States District Court,
D. Kansas.

April 27, 2004.

1100

in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA). This matter comes before the court on defendant Yellow Corporation's Motion to Dismiss and Compel Arbitration (Doc. 3).

## I. Background

Plaintiff was an employee of defendant from approximately 1975 to June 2003. On or about May 30, 2002, plaintiff signed a Policy Receipt and Acknowledgment (receipt and acknowledgment). The receipt and acknowledgment stated that plaintiff had received a copy of defendant's various policies, including defendant's dispute resolution policy, and that she agreed to familiarize herself with and comply with all of the policies. The receipt and acknowledgment states:

> I understand that these policies represent the current policies, regulations and terms and conditions of employment at the company. Any and all benefits, policies, practices, and/or terms and conditions of employment may be changed, added or deleted at any time, except for the "at will" nature of my employment (which may be changed only by a writing signed by the President of [defendant] and me) and the Dispute Resolution Process (which will only be changed by the Company prospectively after notice to me).

The receipt and acknowledgment also contained a paragraph, immediately above plaintiff's signature, which states:

> I also acknowledge that the Company uses a system of alternative dispute resolution that involves binding arbitration (the Dispute Resolution Process) to resolve disputes that arise out of the employment context.

Defendant's dispute resolution policy states in pertinent part:

Sandra L. Schermerhorn, Schermerhorn Law Firm, Kansas City, MO, for Plaintiff.

David C. Vogel, Robert W. McKinley, Lathrop & Gage, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

This action arises out of plaintiff's claims that defendant discriminated against her

[A]ll disputes, claims or controversies arising out of, or related to your employment or the cessation of your employment with [defendant] that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") will be resolved exclusively by final and binding arbitration before a neutral arbitrator.

The dispute resolution policy defines employment claims as including, but not limited to "claims of discrimination, harassment or retaliation ... whether based on local, state, or federal laws or regulations, or on tort, contract, or equitable law, or otherwise." The policy specifically includes claims under the ADEA and Title VII of the Civil Rights Act of 1964 as employment claims. Under the dispute resolution policy, an employee is required to initiate the dispute resolution process by sending a certified mail letter to defendant's human resources department within one year after the date a claim arises.

The dispute resolution policy further states:

I understand that the costs of arbitration and arbitrator fees will be split equally between me and [defendant] unless other express statutory provisions or controlling case law conflict with this allocation and require the payment of costs and fees by [defendant]. If such a conflict exists, the costs of arbitration and the arbitration fees will be paid by [defendant].

Substantive statutory protections or controlling case law shall govern the allocation of awards of attorney's fees and costs.

In the event any portion of this Dispute Resolution Process is held to be in conflict with a mandatory provision of applicable law, the conflicting provision shall be stricken and the remainder of this procedure shall be enforced.

**The Dispute Resolution Process is a condition of your employment.**
(Emphasis in original document provided to the court).

Plaintiff claims she repeatedly discussed with defendant's human resources department the discrimination she allegedly experienced during her employment prior to her alleged constructive discharge and filing of this lawsuit. Plaintiff further claims that, in a letter dated September 27, 2002, counsel for plaintiff notified defendant's vice president of human resources of her issues. Plaintiff claims that at no time did defendant suggest or refer plaintiff to arbitration.

On July 14, 2003, plaintiff filed this lawsuit alleging violations of her rights under Title VII and the ADEA. Defendant subsequently filed the current motion to dismiss, claiming that plaintiff entered into a valid and enforceable agreement to arbitrate all disputes arising out of or relating to her employment with defendant. Defendant contends that plaintiff's claims are employment claims under its dispute resolution policy because they arise out of and relate to her employment with defendant and therefore are subject to the arbitration provision of the dispute resolution policy. Defendant requests that the court dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, compel arbitration and stay the case until arbitration is complete.

Plaintiff opposes defendant's motion and claims that the arbitration agreement is unenforceable because: 1) it requires plaintiff to pay half the arbitrator's costs and fees; 2) defendant has waived its right to seek enforcement of the agreement; and 3) in general, defendant's policies, including the alternative dispute resolution policy, are subject to change at defendant's discretion, making them illusory and indefinite.

## II. Enforcement of Arbitration Agreements

■ The FAA ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that the court "rigorously enforce" them. *Shearson/Am. Exp., Inc., v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)); *see Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Section 3 of the FAA states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

■ The question of whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT & T Techs., Inc. v. Communication Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Arbitration is a matter of contract between the parties. A party can be made to arbitrate only those disputes which they have agreed to submit to arbitration. *Id.* at 648, 106 S.Ct. 1415; *see also Avedon Eng'g., Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997).

■ When a contract contains an arbitration provision, there is a presumption of arbitrability. *See AT & T,* 475 U.S. at 650, 106 S.Ct. 1415. A request to arbitrate a dispute should not be denied unless the arbitration clause does not cover the dispute at issue. Any doubts should be resolved in favor of coverage under the arbitration clause. *Id.* (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see also Denhardt v. Trailways, Inc.,* 767 F.2d 687, 689 (10th Cir.1985). Moreover, when a contract contains a broad arbitration clause, with no express provision excluding a particular issue from arbitration, there is a strong presumption in favor of issues being subject to arbitration. *Id.; see also Brown v. Coleman Co., Inc.,* 220 F.3d 1180, 1184 (10th Cir.2000). A party can overcome this presumption by showing the agreement to arbitrate is not part of a contract involving interstate commerce or is revocable on grounds that exist at law or equity for revocation of any contract. *See* 9 U.S.C. § 2; *see also Avedon Eng'g.,* 126 F.3d at 1286.[1]

---

1. Section 1 of the FAA states that it does not apply to "contracts of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." However, this exception only exempts contracts of employment of transportation workers. *Circuit City Stores, Inc.,* 532 U.S. at 105, 121 S.Ct. 1302.

## III. Discussion

Plaintiff does not dispute that she signed an agreement to arbitrate claims against defendant or that the claims she raises in this lawsuit would be covered by the arbitration agreement.[2] The parties also do not dispute that the FAA governs the arbitration agreement.[3] Rather, plaintiff challenges the enforceability of the arbitration agreement. The court therefore addresses the parties' arguments regarding enforceability below.

### A. Payment of Half the Arbitrator's Costs and Fees

Plaintiff first challenges the enforceability of the arbitration agreement because it requires an employee bringing a claim to pay one half of the fees and costs associated with the arbitration. Plaintiff claims that the arbitration agreement prevents her from seeking redress in federal court, where there are no costs for a judge's services, and forces her instead to seek a resolution through arbitration, which plaintiff claims is prohibitively expensive. In support of her position, plaintiff cites to a Tenth Circuit case, *Shankle v. B–G Maint. Mgmt.*, 163 F.3d 1230 (10th Cir.1999), which held that a fee-splitting provision can render an arbitration agreement unenforceable in the employment context.

Defendant argues that the arbitration agreement at issue in this case contains two clauses which distinguish it from the agreement in *Shankle*. First, the fee-splitting provision itself states that it does not apply if it conflicts with controlling state law, and that if such conflict exists, defendant will pay the costs of the arbitration. Second, the agreement contains a savings clause, which states that if any portion of the agreement is in conflict with a mandatory provision of applicable law, the conflicting portion shall be stricken and the remainder of the agreement enforced. Defendant cites to *Fuller v. Pep Boys—Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158, 1162 (D.Colo.2000), which held that *Shankle* "does not stand for the proposition that a fee-splitting provision voids, ab initio, an agreement to arbitrate." Defendant thus urges the court to disregard what may be an otherwise unenforceable fee-splitting provision and uphold the validity of the agreement to arbitrate.

Since the *Shankle* decision, this court has relied on a more recent Supreme Court decision requiring a case-by-case determination of whether a cost-splitting provision renders an arbitration agreement unenforceable. *In re Universal Serv. Fund*, 300 F.Supp.2d at 1129 (citing *Green Tree Fin. Corp.Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). Moreover, "a party

---

**2.** Plaintiff's claims in this lawsuit arise from her employment with defendant and appear to be encompassed within the language of the arbitration agreement. Such an interpretation furthers the strong federal policy favoring arbitration and is in agreement with the Supreme Court and the Tenth Circuit, both of which have applied the presumption in favor of arbitrability even where a party's claims are founded on statutory rights, such as a federal employment discrimination statute. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir.1995);

*see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F.Supp.2d 1107, 1126 (D.Kan.2003).

**3.** Although not disputed by the parties, the court notes that the agreement to arbitrate claims that plaintiff executed as part of her ongoing employment with defendant is covered by the FAA; there is no evidence in the record that plaintiff is a transportation worker exempt from the provisions of the FAA. *See Circuit City Stores, Inc.*, 532 U.S. at 105, 121 S.Ct. 1302 (arbitration agreements in employment contracts are generally enforceable under the FAA).

seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs." *Id.* at 1128. Plaintiff has not presented *any* evidence to the court regarding the potential cost of the arbitration, much less evidence from which the court could conclude that requiring plaintiff to arbitrate her claims would be so expensive as to deter her from vindicating her statutory rights. In the absence of any evidence in support of plaintiff's allegation that the costs of arbitration are prohibitive, the court finds that plaintiff has not met her burden on this matter. *See id.*[4]

**B. Defendant's Alleged Waiver of Its Right to Enforce the Agreement**

■■■■ The right to arbitrate a claim can be waived, just as any other contractual right. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir.1994). In determining whether the right to arbitrate has been waived, the court must examine the following: 1) whether the party's actions are inconsistent with the right to arbitrate; 2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; 3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; 4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; 5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and 6) whether the delay "affected, misled, or prejudiced" the opposing party. *Id.* (quoting *Peterson v. Shearson/Am. Express*, 849 F.2d 464, 467–68 (10th Cir.1988)). Whether a waiver has occurred depends on the specific facts of each case. *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir.1980).

■■■■ Plaintiff claims that, because defendant did not seek to arbitrate until plaintiff filed this lawsuit, defendant has waived its right to enforce the arbitration agreement. Plaintiff essentially claims that defendant's knowledge of plaintiff's allegations prior to her filing this lawsuit, and its failure to suggest or refer plaintiff's issues to arbitration, have acted as a waiver. Defendant disagrees, and contends that, under the factors set forth in the *Metz* case, it was not required to seek arbitration prior to filing its motion to compel arbitration.

Plaintiff filed her complaint on July 14, 2003. Defendant filed its motion to compel arbitration and either dismiss or stay this case on September 29, 2003, as its first responsive pleading to plaintiff's complaint. Thus, the litigation machinery had not been substantially invoked, the parties were not well into preparation of the lawsuit, and defendant did not delay in seeking its stay of this litigation. Defendant has not filed a counterclaim against plaintiff. When defendant filed its motion to compel arbitration, the parties had not engaged in discovery or other judicial proce-

---

4. Even if plaintiff had submitted evidence to demonstrate that arbitration would be prohibitively expensive, the court would be inclined to invoke the savings clause in the arbitration agreement, which would strike the fee-splitting provision and cause defendant to pay the arbitration costs. *See, e.g. McWilliams v. Logicon, Inc.*, No. Civ. A. 95–2500–GTV, 1997 WL 383150, at *2 (D.Kan. June 4, 1997) (after staying an action and ordering parties to arbitration, the court held that if an employer requires its employee to submit employment disputes to arbitration, employer must assume responsibility for all of the arbitrator's fees and expenses).

dures not available in arbitration. Moreover, despite plaintiff's claim that she has been prejudiced by the delay because defendant allegedly did not disclose its intent to seek arbitration until plaintiff filed her complaint, plaintiff has not cited, nor has the court found, any authority requiring defendant to invoke the arbitration clause prior to the filing of a lawsuit.[5] The court finds no indication that defendant's actions were inconsistent with its right to arbitration. Having weighed the *Metz* factors, the court finds that defendant has not waived its right to enforce the arbitration agreement.

### C. Whether the Agreement Is Illusory and Indefinite

██ Finally, plaintiff claims that the alternative dispute resolution policy is subject to change at defendant's discretion, making it illusory and indefinite. Plaintiff argues that the arbitration agreement also lacks mutuality of obligation, and thus lacks consideration, making it unenforceable. Defendant contends that it did not retain an unfettered right to modify its policies with regard to the dispute resolution process—which encompasses the agreement to arbitrate. Defendant claims that it may only change the arbitration agreement's terms and procedures prospectively, following notice to its employees. Defendant argues that the notice provision eliminates concerns regarding mutuality and consideration.

The Tenth Circuit has held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." (*See Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002)). However, in this case, the portion of the receipt and acknowledgment that gives de-

fendant the right to change, add or delete at any time any benefits, policies, practices, and/or terms and conditions of employment specifically exempts the dispute resolution policy and the agreement to arbitrate. The dispute resolution policy specifically states that it is a condition of employment, and the receipt and acknowledgment is clear that the dispute resolution process and the agreement to arbitrate may be changed only following notice to employees. The court concludes that such language communicates to employees that the dispute resolution policy and arbitration agreement is separate and distinct from the rest of defendant's policies, and defendant's reservation of its right to change benefits, policies, practices, and terms and conditions of employment at any time does not apply to the dispute resolution policy. Because the dispute resolution policy and the arbitration agreement are a condition of employment, and defendant must provide employees notice before changing the dispute resolution policy and the arbitration agreement, the court finds that the arbitration agreement has mutuality of obligation and is not illusory.

### D. Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1)

██ Based on the foregoing, the court finds the arbitration agreement enforceable and that plaintiff's claims should be referred to arbitration. However, with regard to defendant's motion to dismiss, the court notes that, while section 3 of the FAA requires the court to stay litigation when claims are properly referable to arbitration, it does not provide for dismissal of the case. The Supreme Court has held that the FAA does not oust the district court's jurisdiction over claims subject to

---

5. In fact, *see McWilliams v. Logicon, Inc.,* 143 F.3d 573, 576–77 (10th Cir.1998), holding that an employer did not waive its right to

demand arbitration of employee's federal discrimination claims by failing to invoke the arbitration clause before employee filed suit.

arbitration. *The Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 44, 64 S.Ct. 863, 88 L.Ed. 1117 (1944). The Tenth Circuit has interpreted this to mean that section 3 of the FAA contemplates continuing supervision by the district court. *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538–39 (10th Cir.1987). Thus, the court denies defendant's motion to dismiss pursuant to Rule 12(b)(1).

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss and Compel Arbitration (Doc. 3) is granted in part and denied in part. The court finds that plaintiff's claims against defendant are subject to arbitration and are hereby stayed pending arbitration. Defendant's Motion to Dismiss is therefore denied.

**IT IS FURTHER ORDERED** that the parties shall proceed to arbitration in accordance with the provisions of the arbitration clause.

**IT IS FURTHER ORDERED** that this court shall retain jurisdiction to review, modify, or vacate any arbitration awards, should any party choose to seek such action as permitted by the FAA.